UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

04 10211 RCL

SUZANNE WRIGHT, Individually and )
As TRUSTEE, MARTIN'S COVE )
REALTY TRUST )
   Plaintiff )
)
vs )
)
WILLIAM ROBERT MEARA and )
BRENDA MEARA, )
   Defendants )

## PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

Now comes the Plaintiff pursuant to Federal Rule of Civil Procedure 65 and hereby moves for a temporary restraining order precluding Defendants William Robert Meara and Brenda Meara from disposing of or encumbering any real property, transferring or selling any stock, bonds, mutual funds or other similar assets, or spending any amount in excess of $500.00 other than mortgage payments, without further order of the Court. In support of its Motion Plaintiff refers the Court's attention to the Verified Complaint filed in this matter, along with the additional exhibits and Affidavit of Scott Machanic, Esq. submitted herewith.

## FACTUAL BACKGROUND

Defendant Brenda Meara, along with several other individuals, provided personal care and other services to Plaintiff, Suzanne Wright's mother, Irene Thibodeau, and father, Paul H. Thibodeau, who were very ill. (Verified Complaint, Paragraph 7).

Eventually, it was decided that using one person, rather than using different people, to provide services would be preferable. Defendant Brenda Meara was asked if she would provide assistance on a 24 hour per day basis, and move into the premises at 21 Martin's Cove Road, Hingham, Massachusetts (hereinafter, Hingham Property") to provide the needed care. (Id., Paragraph 8). Defendant Brenda Meara agreed to provide the care and moved into the Hingham Property along with her husband, Defendant William Robert Meara. (Id., Paragraph 9). At the time the Hingham Property was owned by Paul H. Thibodeau. (Id., Paragraph 10). Defendant Brenda Meara provided care to Paul H. Thibodeau at the Hingham Property for approximately five years prior to his death on March 5, 1993. (Id., Paragraph 11).

In preparation for the probating of her father's estate and other similar duties, Plaintiff had the Hingham Property appraised. Its value, according to the appraisal, was approximately Six Hundred Thousand Dollars ($ 600,000.00). (Id., Paragraphs 13, 14). Defendants continued to live in the premises, and expressed a desire to have an ownership interest in the Hingham Property. In recognition of the services provided by Brenda Meara, Plaintiff agreed to a mechanism by which the Defendants could obtain an ownership interest in the Hingham Property. (Id., Paragraphs 15, 16). Specifically, Plaintiff and Defendant William Robert Meara entered into a Partnership Agreement ("Partnership Agreement") dated January 1, 1995, a copy of which is attached to the Verified Complaint as Exhibit "1". (Id., Paragraph 17). In furtherance of the Agreement, Plaintiff also executed a Declaration of Trust ("Hingham Trust"), a copy of which is attached to the Verified Complaint as Exhibit "2". (Id., Paragraph 18). The Partnership Agreement required, amongst other things, that Defendant William Meara make certain

payments towards his required $600,000.00 capital contribution. In particular, Defendant William Meara was obligated to pay $24,000.00 per year for a number of years along with certain carrying costs for the Hingham Property. Defendants William Meara and Brenda Meara failed to make all of the payments required under the Partnership Agreement. In fact, by the spring of 2003 they had made payments totaling approximately $68,700.00 of the $192,000.00 in payments which were due. (Id., Paragraph 19).

In early 2003, Defendants represented to Plaintiff that they desired to buy the Hingham Property, and to make the Hingham Property their residence for the foreseeable future. In January of 2003, Defendants traveled to California and met with the Plaintiff to discuss the possible sale of the Hingham Property to them. Plaintiff specifically inquired whether the Defendants were planning on selling the Hingham Property, and suggested that, if the Hingham Property were to be sold the sale proceeds should go to the Hingham Trust and Partnership. (Id., Paragraphs 20 – 22).

The Defendants denied that they intended to sell the Hingham Property, and represented that they intended to live there for the foreseeable future. Based upon, and in reliance on, Defendants' representations that they would not sell the Hingham Property in the foreseeable future, and that the Defendants would live at the Hingham Property for the foreseeable future, Plaintiff agreed to sell the Hingham Property to the Defendants for Six Hundred Thousand Dollars ($600,000.00). (Id., Paragraphs 23, 24).

Based upon the Partnership Agreement, if the Property was sold, Plaintiff would share in the profits with Defendants. (Exhibit "1," Article III, p. 3). Because she had lived in California for a number of years, Plaintiff was not aware of the full extent to

which real estate values in Massachusetts had grown. Under the terms of the Partnership Agreement, because Defendants were living in the property, they were obligated to, and did, pay real estate taxes on the property, among other expenses. Accordingly, the Defendants must have been aware of the assessed value of the Hingham Property. As of early January, 2003, the Defendants knew or should have known that the assessed value of the Hingham Property was in excess of $ 2,300,000.00. (Verified Complaint, Paragraphs 26 – 28).

On March 11, 2003, in reliance on Defendants' representations, Plaintiff executed a Quitclaim Deed, conveying the Hingham Property to Defendant William Robert Meara for Six Hundred Thousand Dollars ($600,000.00), a copy of which is attached as Exhibit "3" to the Verified Complaint. (Id., Paragraph 29). The HUD-1 settlement statement for the sale of the Hingham Property, a copy of which is attached hereto as Exhibit "A", indicates that Defendant William Meara received a loan on the Hingham Property in the amount of $750,000.00 contemporaneous with his purchase of the Hingham Property. It appears that Defendants had, by June 18, 2003, listed the property for sale with a real estate broker, Patty Byrne, of Hingham Centre Ltd., as the Hingham Property was the subject of an article which appeared in the local newspaper on that date, which article indicated a listing price of Three Million Two Hundred Fifty Thousand Dollars ($3,250,000.00). A copy of that newspaper article is attached to the Verified Complaint as Exhibit "4". (Id., Paragraph 30).

Plaintiff subsequently learned that, on or about August 29, 2003, Defendant William Robert Meara executed a quitclaim deed, selling the Hingham Property to Michael G. Smith and Elizabeth S. Smith for Two Million Eight Hundred Fifty Thousand and

Eighty-eight Dollars ($2,850,088.00). A copy of that deed as recorded in the Plymouth County, Massachusetts Registry of Deeds is attached to the Verified Complaint as Exhibit "5". (Id., Paragraph 31). Plaintiff further learned that on or about August 29, 2003, William and Brenda Meara purchased a property located at 190 Flume Avenue, Barnstable, Massachusetts (hereinafter, "Barnstable Property") for Eight Hundred Eighty-Five Thousand Dollars ($885,000.00). A copy of the deed for that purchase is attached to the Verified Complaint as Exhibit "6". (Id., Paragraph 32). The Defendants have therefore netted, in addition to the Flume Avenue property, approximately $1,965,088.00 of the proceeds from the sale of the Hingham Property.

## ARGUMENT

## STANDARD FOR INJUNCTIVE RELIEF

In order to prevail on its request for a temporary restraining order and preliminary injunction, Plaintiff bears the burden of demonstrating: 1) that she has a substantial likelihood of success on the merits; 2) a significant risk of irreparable harm if the injunction is withheld; 3) a favorable balance of hardships; and 4) a fit (or lack of friction) between the injunction and the public interest. Nieves-Marquez v. Commonwealth of Puerto Rico, 2003 WL 23008818 (1st Cir. 2003) citing McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001). In this action, and as will be provided **infra**, Plaintiff satisfies each of the four criteria.

I. **LIKELIHOOD OF SUCCESS ON THE MERITS: PLAINTIFF HAS PRELIMINARILY ESTABLISHED CLAIMS OF FRAUD, BREACH OF FIDUCIARY DUTY AND VIOLATION OF THE TERMS OF THE PARTNERSHIP AGREEMENT BY DEFENDANT MEARA**

5

Plaintiff's claim for misrepresentation is strong. Defendants represented to Plaintiff that if Plaintiff sold the Hingham Property to them, they would continue to reside at the Hingham Property. "Statements of present intention as to future conduct may be the basis for a fraud action, if 'the statements misrepresent the actual intention of the speaker and were relied upon by the recipient to his damage.' (Citations omitted)." Starr v. Fordham, 420 Mass. 178, 187, 648 N.E.2d 1261, 1267 (1995). Given the very short interval between the date of the transfer of the title to the property to Defendants, and the date upon which advertisements appeared in the local papers proclaiming the property was for sale, it appears that Defendants never intended to live in the premises for the foreseeable future, but intended all along to make a "quick score," by immediately selling the property, which they knew was worth over $ 2,000,000 more than they would have to pay Plaintiff for the property. While Plaintiff did not realize the level to which the Hingham Property had appreciated, Plaintiff never would have agreed to permit Defendants to sell the Hingham Property and retain the entire net proceeds of the sale under these conditions. Because Defendants made numerous representations to Plaintiff that they would not sell the Hingham Property, and because Plaintiff relied upon said representations to her detriment, Plaintiff possesses a valid misrepresentation claim against Defendants.

### B.   DEFENDANT WILLIAM MEARA VIOLATED HIS FIDUCIARY DUTY OWED TO PLAINTIFF, HIS PARTNER

"Partners owe each other a fiduciary duty of the highest degree of good faith and fair dealing. Cardullo v. Landau, 329 Mass. 5, 8, 105 N.E.2d 843 (1952), Shelley v. Smith, 271 Mass. 106, 115, 170 N.E. 826 (1930). When a partner has engaged in self-

7

dealing, that partner has the burden to prove the fairness of his actions and to prove that his actions did not result in harm to the partnership. See Meehan v. Shaughnessy, 404 Mass. 419, 441, 535 N.E.2d 1255 (1989)." Starr v. Fordham, 420 Mass. at 183, 648 N.E.2d at 1265.

Here, by buying the Hingham Property from the partnership, Meara was engaged in self-dealing. He did so without full disclosure to his partner, the Plaintiff, concerning the true, full value of the property, and without disclosing his true intention, which was that he was prepared to immediately sell the property, which he did shortly after purchasing the premises.

Plaintiff has therefore again demonstrated a reasonable likelihood that she will prevail on the merits, with respect to a breach of fiduciary duty claim.

C. **DEFENDANT WILLIAM MEARA HAD NO AUTHORITY TO SELL THE HINGHAM PROPERTY PURSUANT TO THE TERMS OF THE PARTNERSHIP AGREEMENT**

Defendants breached the terms of the Partnership Agreement by selling the Hingham Property and retaining the net proceeds from the sale which were, upon information and belief, in the vicinity of $2,000,000.00 after the payment of the liens and expenses related to the sale. Section 5.1(a) of the Partnership Agreement named Suzanne Wright the managing partner. As such she had the rights to the "exclusive management and control of the business of the Partnership". (See Section 5.2(a)). Moreover, Plaintiff, as managing partner, was imbued with a variety of exclusive powers including, according to Section 5.2(c) of the Partnership Agreement, the

8

> full, exclusive and complete right to direct and control the business of the Partnership. The Managing Partner has the authority to execute on behalf of the Partnership any checks, documents, agreements, or other instruments.

The evidence will show that Plaintiff never signed any document by which she relinquished her role as managing partner despite the repayment to her of her capital contribution. Defendant William Meara violated the terms of the Partnership Agreement in deeding the Hingham Property to a purchaser for value as only Plaintiff, in her capacity as managing partner, was authorized to execute instruments relative to the Hingham Property.

### D. THE PARTNERSHIP AGREEMENT REQUIRED DISBURSEMENTS TO THE PARTNERS IN PROPORTION TO THE AMOUNT OF THEIR CAPITAL CONTRIBUTIONS

Plaintiff made an initial $600,000.00 capital contribution to the Partnership. Defendant William Meara contributed the sum of $68,700.00 as of March of 2003. Defendant William Meara failed to raise the $600,000.00 capital contribution required of him. Instead, and as referenced on the Settlement Statement for the Hingham Property attached hereto as Exhibit "E", Defendant William Meara borrowed the sum of $750,000.00 against the Hingham Property in order to reimburse Plaintiff for her capital contribution. Thus, Plaintiff's capital contribution totaled $600,000.00 whereas Defendant William Meara's contribution totaled $68,700.00 or, alternatively, $600,000.00 if he is credited with a capital contribution when he borrowed against the Hingham Property. Section 3.2 of the Partnership Agreement governs the distributions of funds to the partners and provides in Paragraph (a) that

9

>all distributions to the Partners shall be shared by each partner in the ratio of his paid-in capital contribution to the paid-in contributions of all Partners.

Defendant William Meara breached the terms of the Partnership Agreement by selling the Hingham Property without authorization and by failing to disburse the sale proceeds in accordance with the Partnership Agreement. Plaintiff's capital contribution of $600,000.00 exceeded the $68,700.00 capital contribution of Defendant William Meara by an approximate multiple of 9 or, at a minimum, was equal to that of Defendant William Meara. Thus, Defendants defrauded Plaintiff out of a minimum of one-half of the $2,850,088.00 sale price or, if the approximate multiplier of 9 is used to determine capital distributions, approximately $2,565,000.00

E.  **THE PARTNERSHIP WAS NEVER DISSOLVED AND THEREFORE PLAINTIFF WAS ENTITLED TO HER PORTION OF THE CAPITAL CONTRIBUTION**

As of the date of Defendant William Meara's sale of the Hingham Property Plaintiff still possessed an interest in the partnership. The parties never dissolved the partnership in accordance with Section 7.1 (b) of the Partnership Agreement. Specifically, there was "no determination by the holders of not less than 66.66% of the interests in the Partnership, that the Partnership should be dissolved". Additionally, as referenced above, while the Plaintiff was repaid her initial capital contribution, Plaintiff retained her partnership interest and status as managing partner. Plaintiff certainly did not consent to Defendant William Meara's sale of the Hingham Property within several months of Plaintiff's conveyance of the Hingham Property to him particularly where Defendant William Meara had fallen woefully behind in the payment of his capital contributions and **had borrowed against the Hingham Property to repay Plaintiff her**

10

**capital contribution.** It would be unconscionable and egregious to permit Defendants to retain the approximately $2,000.000 in net proceeds from the sale of the Hingham Property based upon their $68,700.00 capital contribution particularly where Defendant William Meara was only able to raise additional funds by mortgaging the Hingham Property. Since the Partnership was never dissolved, Defendant William Meara breached the Partnership Agreement by retaining the proceeds of the sale of the Hingham Property.

### F. DEFENDANT WILLIAM MEARA BREACHED THE PARTNERSHIP AGREEMENT BY FAILING TO OFFER HIS INTEREST TO PLAINTIFF

Plaintiff further contends that Defendant William Meara breached the Partnership Agreement by failing to offer Plaintiff the right to purchase Defendant William Meara's Partnership interest. Section 6.1 of the Partnership Agreement provides that

> no Partner shall sell, transfer, encumber or otherwise dispose…of any portion of his Partnership Interest unless he has first offered such portion of his Partnership Interest to the Partnership and the other Partners as set forth in Section 6.2 hereof.
> Any attempted transfer of any portion of a Partnership Interest made without compliance with the terms of this Section 6.1 shall be void and of no effect.

Plaintiff contends that Defendant William Meara's conveyance of the Hingham Property constituted the sale of the only asset of the Partnership and thus arguably constitutes a disposition of his partnership interest. Section 6.2 (a) of the Partnership Agreement details the mechanics of the sale of the partnership interest as follows:

> the partner proposing to sell or transfer his Partnership Interest or a portion thereof…shall give notice in writing to the Partnership and each other Partner of his intention to sell,

11

> transfer, encumber or otherwise dispose of all or a portion of his Partnership Interest.

The Partnership Agreement Section 6.2 (b) further provides that

> the other Partners and the Partnership... shall have sixty (60) days within which to respond to the offer of the Transferor

Defendant William Meara will be unable to show that he provided Plaintiff with **any** notice of the sale of the Hingham Property which sale effectively terminated Defendant William Meara's partnership interest. Defendant William Meara thereby deprived Plaintiff of her right to pay Defendant William Meara the amount of his capital contribution, be it $68,700.00, $600,000.00 or some other figure. Plaintiffs certainly would have agreed to pay Defendant William Meara any of the referenced figures in order to prevent Defendant William Meara from recovering a windfall of, in the light most favorable to him, nearly 5 times the amount of his capital contribution. Consequently, Defendant William Meara breached the terms of the Partnership Agreement by failing to offer his partnership interest to Plaintiff.

## II.   IRREPARABLE HARM

There will be no harm to Defendants if they are restrained from disposing of any real property, transferring or selling any stock, bonds, mutual funds or other similar assets, or spending any amount in excess of $500.00 other than mortgage payments pending further order of this Court. The status quo will simply be maintained and Defendants' ownership interest in the Barnstable Property will be preserved pending a

resolution of Plaintiff's action. Plaintiff will be immediately and irreparably harmed if Defendants' interest in the Barnstable Property or any other property in which they possess an interest is sold or transferred prior to an adjudication of the merits of Plaintiff's claim. Defendants' sale of the Barnstable Property or any other property to a bona-fide purchaser could forever extinguish Plaintiff's ability to collect the Judgment they anticipate recovering against Defendants. Plaintiff is unaware of Defendants' ownership of assets other than the Barnstable Property (Affidavit of Scott L. Machanic, Paragraph  ) and Plaintiff is uncertain whether Defendants have disbursed or expended the estimated $2,000,000.00 in proceeds they received as a result of the sale of the Hingham Property. Defendants could easily transfer their other assets, i.e., the remaining $ 2,000,000.00, if they are given advance notice of this motion.

### III. BALANCING OF HARDSHIPS AND FIT BETWEEN INJUNCTION AND THE PUBLIC INTEREST

As referenced above, Plaintiff will be harmed if Defendants repeat their actions in conveying the Barnstable Property, or other proceeds of the sale of the Hingham Property, in a surreptitious manner, as they did the Hingham Property. Plaintiff states that the terms of the Partnership Agreement compelled the Defendants to escrow the proceeds from the sale of the Hingham Property in the event the Hingham Property was sold. If Defendants are not restrained from conveying the Barnstable Property the Plaintiff may be deprived of their only source of recovery for their claim against Defendants. The public interest is served by barring the Defendants' from dissipating their assets. Plaintiff's claim that Defendants perpetrated a fraud upon Plaintiff and

13

Plaintiff's deceased parents. Defendants engaged in a scheme to deprive Plaintiff of her rightful inheritance and abused the good will shown to them by Plaintiff and her parents. The common good militates in favor of the Court declaring Defendants actions unconscionable. Freezing Defendants' assets is a necessary and appropriate first step given Defendants' egregious behavior in attempting to defraud Plaintiff.

WHEREFORE, Plaintiff requests that a restraining Order and injunction enter against Defendants and that the Court enter the following relief:

a. That a temporary restraining order issue against Defendants restraining and enjoining them from disposing of or encumbering any real property, transferring or selling any stock, bonds, mutual funds or other similar assets, or spending any amount in excess of $500.00 other than mortgage payments, pending further orders of this Court;

b. That a preliminary injunction issue restraining and enjoining them from disposing of or encumbering any real property, transferring or selling any stock, bonds, mutual funds or other similar assets, or spending any amount in excess of $500.00 other than mortgage payments, pending further order of this Court;

c. That a permanent injunction issue restraining and enjoining them from disposing of or encumbering any real property, transferring or selling any stock, bonds, mutual funds or other similar assets, or spending any amount in excess of $500.00 other than mortgage payments, pending further order of this Court

d. For such other and further relief that this Court deems reasonable and just.

Respectfully submitted
Suzanne Wright, individually and
Trustee of Martin's Cove Realty Trust
By her attorneys

Scott L. Machanic   BBO # 311120
Robert F. Tenney BBO#565092
Cunningham, Machanic, Cetlin,
Johnson & Harney, LLP
220 N. Main Street
Natick, MA 01760

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

SUZANNE WRIGHT, Individually and )
    As TRUSTEE, MARTIN'S COVE )
    REALTY TRUST )
       Plaintiff )
       )
    vs )
       )
WILLIAM ROBERT MEARA and )
BRENDA MEARA, )
       Defendants )

## AFFIDAVIT OF SCOTT MACHANIC, ESQ.

I, Scott Machanic, depose and state as follows:

1.    I am an attorney licensed to practice in Massachusetts and a partner in the law firm of Cunningham, Machanic, Cetlin, Johnson & Harney. I represent the Plaintiff in the above-captioned matter.

2.    I have not provided Defendants with any notice of the filing of the Verified Complaint or Plaintiff's Motion for Temporary Restraining Order.

3.    I do not believe giving the Defendants notice of the filing of the Motion for Temporary Restraining Order is appropriate in this instance given the nature of the remedy sought and the nature of Defendants' actions.

15

4.      Plaintiff seeks to enjoin Defendants' transfer of real property, transferring or selling any stock, bonds, mutual funds or other similar assets, and/or their expenditure of more than $500.00 for any expense other than monthly mortgage payments.

5.      Plaintiff alleges in her Motion for Restraining Order that Defendants William and Brenda Meara perpetrated a fraud against the Plaintiff which induced her to sell Defendants property located in Hingham for far less than its market value, and immediately sold the property and pocketed a gain of approximately $ 2,000,000.

6.      In addition, Plaintiff alleges that Meara violated a certain Partnership Agreement entered into between the parties by, amongst other things, selling the property located in Hingham, Massachusetts.

7.      I believe that Plaintiff will be able to establish that Defendant William Meara violated the terms of the Partnership Agreement in a number of ways.
It is alleged that Defendant William Meara violated the Partnership Agreement by not distributing the proceeds from the sale of the Hingham Property in accordance with the amount of the partner's contributions. It is also alleged that Defendant William Meara did not have authority to sell the Hingham Property as only Plaintiff, in her capacity as managing partner, could do so. Additionally, it is alleged that Defendant William Meara did not provide any notice to Plaintiff

16

of the sale of the Property despite the language in the Partnership Agreement requiring notice.

8. Defendants should not receive notice of Plaintiff's Motion, as Defendants have already shown a propensity for deceptive conduct, and approximately $ 2,000,000 of the proceeds of the involved transaction are not yet accounted for, which proceeds they could further hide if given notice. In addition, Defendants should not be given notice of this Motion, given their failure to provide any notice to Plaintiff of the sale of the Hingham Property for $2,850,088.00. As referenced in Plaintiff's Motion Defendant's actions are particularly egregious given the friendship and generosity bestowed upon them by Plaintiff and her deceased parents.

9. Prior to filing suit in this matter, I retained title examiners to review filings in the Middlesex, Massachusetts North and South Registries of Deeds, and the Suffolk, Plymouth, and Barnstable Registries of Deeds, and the only real property which either Defendant owned was that located in Barnstable, Massachusetts.

10. Plaintiff's ability to recover the monies which are rightfully hers will be jeopardized if Defendants are given advance notice of Plaintiff's Motion.

11. Plaintiff and I are fearful that if ex parte relief is not permitted Defendants will transfer or convey assets in a manner similar to which they conveyed the Hingham Property.

I hereby state that the information set forth herein is true, to the best of my knowledge and belief.

SIGNED THIS __29/1/?__ DAY OF JANUARY, 2004, UNDER PENALTIES OF PERJURY.

_____
Scott Machanic, Esq.

RFT/218764