UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SUZANNE WRIGHT, Individually and as )
TRUSTEE, MARTIN'S COVE REALTY )
TRUST, )
)
)
Plaintiff, )
)
v. ) C.A. No. 04-10211RCL
)
WILLIAM ROBERT MEARA and )
BRENDA MEARA, )
)
Defendants. )
_____)

## DEFENDANTS WILLIAM ROBERT MEARA AND BRENDA MEARA'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS

Introduction

This action is based on an attempt to enforce an alleged oral promise concerning real property that was never reduced to writing. In or about March, 2003, Defendant William Meara ("Mr. Meara") purchased a house from a partnership that Mr. Meara and Plaintiff Suzanne Wright ("Wright") had formed in 1995 (the "Partnership"). Mr. Meara subsequently resold the house. Wright now claims that she is entitled to a portion of the proceeds from that subsequent sale based on an alleged oral promise made by Mr. Meara and his wife, Defendant Brenda Meara ("Mrs. Meara") (collectively referred to as "the Mearas") that they intended to live in the house for the "foreseeable future" after Mr. Meara purchased it from the Partnership.

This entire action fails as a matter of law. First, the Statute of Frauds bars enforcement of an oral promise involving real property. Second, even if Wright's entire case is not barred by the Statute of Frauds, (a) Wright's fraud claim against the Mearas fails because (i) it is not plead with sufficient particularity; and (ii) a representation that is promissory in nature cannot form the

basis of a fraud action and (b) Wright's breach of contract, breach of fiduciary duty, and unjust enrichment claims fail because (i) the partnership ceased to exist once Mr. Meara purchased the house; and (ii) Mrs. Meara was not a party to the alleged agreement that forms the basis of this action. Therefore, this action should be dismissed in its entirety.

## Statement of Facts[1]

According to the Amended Complaint, in the early 1990s, Mrs. Meara, along with several other individuals, was providing personal care and services to Wright's ill parents, Paul and Irene Thibodeau. Am. Comp. ¶ 7. Eventually, the Mearas moved into the Thibodeaus' home located at 21 Martin's Cove Road in Hingham, Massachusetts (the "Property" or the "House") to provide assistance 24-hours per day. Id. at ¶¶ 8-9. According to the Amended Complaint, Mrs. Meara provided care to Mr. Thibodeau for five years until his death on March 5, 1993. Id. at ¶¶ 12-13. Mr. Thibodeau was the owner of the Property at the time of his death.[2] Id. at ¶ 10. The Mearas continued to live in the House after Mr. Thibedeau died. Id. at ¶ 15.

On January 1, 1995, Wright and Mr. Meara entered into a Partnership Agreement as a means by which Mr. Meara could acquire an ownership interest in the Property.[3] Id. at ¶¶ 15-17 (the Partnership Agreement is attached as Exhibit 1 hereto and incorporated herein by reference).[4] Section 1.2 of the Partnership Agreement, titled "Purpose," stated as follows: "The purpose and business of the Partnership is to acquire, finance, own, construct, lease, operate,

---

[1] This Statement of Facts is wholly derived from the allegations contained in Wright's Amended Complaint which are assumed to be true for purposes of this Motion to Dismiss only.
[2] In preparation for the probating of Mr. Thibedeau's estate, Wright had the property appraised. Am. Compl. ¶ 13. According to the appraisal, the property was worth approximately $600,000. Id. at ¶ 14.
[3] Wright and Mr. Meara also executed a Declaration of Trust in furtherance of the Partnership Agreement. Id. at ¶ 18.
[4] Wright attached the Partnership Agreement as an exhibit to the Amended Complaint. See Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998), quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) (documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim).

2

dispose of and otherwise deal with certain real property located at and known as 21 Martin's Cove Road, Hingham, Massachusetts, and the building thereon (the "Property"), and to engage in any and all activities which are necessary or incidental to said purpose." See Exhibit 1. Section 1.2 further provided that "The Partnership shall not engage in any other business without the prior written consent of all the Partners." Id. According to the Partnership Agreement, Mr. Meara was required to make periodic payments of $24,000 per year (plus certain costs) towards his required capital contribution of $600,000. Id. Mrs. Meara was not a party to the Partnership Agreement. According to the Amended Complaint, as of the spring of 2003, Mr. Meara had not made all the required payments. Am. Compl. at ¶ 19.

According to the Amended Complaint, in early 2003, the Mearas expressed an interest in buying the Property outright. Id. at ¶ 20. In January, 2003, the Mearas traveled to California, where Wright lived, to discuss the possible sale of the property to them. Id. at ¶ 21. According to Wright, she asked the Mearas whether they planned on selling the property, to which they responded that they intended to live there for the "foreseeable future." Id. at ¶¶ 22-23. Wright allegedly agreed to sell the property to the Mearas for $600,000.[5] Id. at ¶ 24. Wright and Mr. Meara executed a one-page quitclaim deed on March 11, 2003, which conveyed the Property to Mr. Meara. Id. at ¶ 29. (The quitclaim deed is attached hereto as Exhibit 2 and incorporated herein by reference).[6] Mrs. Meara was not a party to the quitclaim deed. The quitclaim deed did not contain any language concerning the Mearas' alleged promise that they intended to live in the House for the "foreseeable future." There is no allegation in the Amended Complaint that

---

[5] Wright claims that because she had lived in California for a number of years, she was not aware of the extent to which real estate values in Massachusetts had grown and that because the Mearas lived on the Property and paid real estate taxes, they "must have been aware" that the assessed value of the Property exceeded $2,300,000. Id. at ¶¶ 26-28.

[6] Wright attached the quitclaim deed as an exhibit to the Amended Complaint.

this alleged promise was ever reduced to writing.

In the Amended Complaint, Wright states that "upon information and belief" the Mearas listed the Property for sale by June 18, 2003 for a listing price of $3,250,000. Id. at ¶ 30. Wright further alleges that she "had been informed that" on or about August 29, 2003, Mr. Meara sold the Property to Michael and Elizabeth Smith for $2,850,088 and subsequently purchased a home in Barnstable, Massachusetts for $885,000. Id. at ¶¶ 31-32.

## Argument

### A. Standard of Review

"In considering a motion to dismiss, a court must take the [well pleaded] allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993. However, the Rule 12(b)(6) standard "is not entirely a toothless tiger." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). "[M]iminal requirements are not tantamount to nonexistent requirements. The threshold [for stating a claim] may be low, but it is real." Id., quoting, Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988). The Court need not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). Rule 12(b)(6) does not entitle the plaintiff to rest on "subjective characterizations" or conclusory descriptions of a "general scenario which could be dominated by unpleaded facts." Id. at 53; Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U. S. 944 (1983). Because Wright's Amended Complaint fails to meet this burden, it should be dismissed.

B.    The Statute of Frauds bars enforcement of the alleged promise

Any promise involving real property is enforceable only if it meets the requirements of the Statute of Frauds.[7] Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 709, 592 N.E.2d 1289, 1293 (1992); Mass. Gen. Laws ch. 259, § 1. The statute provides, in part, that "No action shall be brought…Upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them…Unless the promise, contract or agreement upon which such action is brought…is in writing and signed by the party to be charged therewith." Mass. Gen. Laws ch. 259, § 1. In order for a writing to satisfy the Statute of Frauds, it must contain all of the essential terms of the alleged agreement. Simon v. Simon, 35 Mass. App. Ct. 705, 709, 625 N.E.2d 564, 567 (1994). Moreover, in order to satisfy the Statute, the writing must "*incorporate directly and accurately the promise that the party seeks to enforce.*" Harrington v. Fall River Housing Auth., 27 Mass. App. Ct. 301, 306, 538 N.E.2d 24, 28-29 (1989) (emphasis added). Whether a writing satisfies the Statute of Frauds is a question of law. Simon, 35 Mass. App. Ct. at 709, 625 N.E.2d at 567.

The Amended Complaint contains no allegation that any writing ever existed concerning the Mearas' alleged promise that they intended to live on the Property for the foreseeable future. Indeed, the quitclaim deed executed by Wright and Mr. Meara *after* this promise was allegedly made contains no language concerning the promise or any restrictions on Mr. Meara's use of or right to resell the Property. See Bendetson v. Coolidge, 7 Mass. App. Ct. 798, 803, 390 N.E.2d 1125, 1127 (1979) (holding that seller's oral promise to build on adjoining parcels of land in conformance with written site plan for original parcel was barred by the Statute of Frauds).

---

[7] Since the Property is located in Massachusetts, Massachusetts law applies to this action. FDIC v. Henry, 818 F. Supp. 452, 454 (D. Mass. 1993), citing Restatement (Second) of Conflict of Laws §§ 228-229, 254 (1971); see also Restatement (Second) of Conflict of Laws § 223 (1971).

There simply never was any written restriction on Mr. Meara's ability to resell the Property.

Moreover, Wright has not provided any details concerning the alleged promise or how she relied on it to her detriment. Rather, she relies solely on the interval of time between the transfer of the Property to Mr. Meara and his subsequent efforts to resell it as the basis for her claims. Mere "illusory reliance" on an oral promise not to sell a piece of property cannot form the basis of an estoppel claim which could conceivably remove the agreement from the Statute of Frauds. Ravosa v. Zais, 40 Mass. App. Ct. 47, 51-52, 661 N.E.2d 111, 116 (1996) (stating that reliance on oral agreement to convey real property does not rise to the level which estops the defendant from pleading the Statute of Frauds defense). Therefore, because the oral promise fails to satisfy the Statute of Frauds, Wright's entire action fails as a matter of law and should be dismissed.

    C.    <u>Wright's fraud claims against William Meara and Brenda Meara fail as a matter of law and should be dismissed</u>

        1.    <u>Wright's fraud claims against the Mearas are barred because they are not pled with sufficient particularity</u>

In order to survive a motion to dismiss, allegations of fraud must be pled "with particularity." Fed. R. Civ. P. 9(b). At a minimum, a plaintiff alleging fraud must state the time, place and content of the fraud as well as what was obtained or given up as a consequence of the fraud. Wayne Investment, Inc. v. Gulf Oil Corp., 739 F.2d 11, 13 (1st Cir. 1984). Moreover, the plaintiff must describe the materiality of the misrepresentation, her reliance, and the resulting harm. Friedman v. Jablonski, 371 Mass. 482, 358 N.E.2d 994 (1976). Allegations based upon "information and belief" do not satisfy Rule 9. Wayne, 739 F.2d at 13-14. Finally, complaints

alleging fraud must set forth specific facts giving rise to an inference that the defendant knew of the falsity of the representations. Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77, 575 N.E.2d 70, 74 (1991). "An 'oblique remark' merely suggesting fraud will not suffice for the purpose of pleading." Charbonnier v. Amico, 367 Mass. 146, 152, 324 N.E.2d 895, 899 (1975).

Wright has failed to allege with any particularity the fraud that she claims the Mearas perpetrated. The Amended Complaint contains, at best, scattered references to a single oral promise that the Mearas intended to reside on the Property for the "foreseeable future." The Amended Complaint provides no details concerning this statement or what is meant by "foreseeable future." Finally, Wright's allegations that the Mearas defrauded her by reselling the Property at a higher price are based on information and belief. Therefore, because the fraud claim fails to satisfy the requirements of Rule 9, it should be dismissed.

2.  An oral promise not to convey land cannot form the basis of a fraud claim

Even if the Court deems that Wright's claim for fraud survives Rule 9, the claim still fails. It is well settled that false representations concerning future events or matters promissory in nature are not actionable. Saxon Theatre Corp. of Boston v. Sage, 347 Mass. 662, 667, 200 N.E.2d 241, 245 (1964). A promissory statement is not a representation of an existing fact, which is required to state a claim for fraud. Fogarty v. Van Loan, 344 Mass. 530, 532, 183 N.E.2d 111 (1962); see also Zimmerman, 31 Mass. App. Ct. at 77, 575 N.E.2d at 74 (enumerating essential elements of a fraud claim, including proof of a misrepresentation of material fact). Wright bases her entire fraud claim against the Mearas on a single alleged promise that they would live in the Property for the foreseeable future after Mr. Meara purchased it. It has been held that a promise to convey land, in and of itself, cannot form the basis of an action for fraud. See Chase v. Aetna Rubber Co., 321 Mass. 721, 724, 75 N.E.2d 637 (1947)

(holding that failure to carry out oral promise to convey land is not fraud). Therefore, by extension, a promise not to sell land is similarly not actionable fraud. Moreover, the alleged promise is so vague that it cannot be said that Wright placed any reliance on it in selling the Property to Mr. Meara.

Nor can Wright seek to recover based solely on the nonperformance of the alleged promise. A fraud action cannot be based on the mere nonperformance of a promise. Galotti v. United States Trust Co., 335 Mass. 496, 501, 140 N.E.2d 449 (1957). Moreover, the nonperformance of an oral promise that falls within the Statute of Frauds cannot form the basis of a fraud action. Chase v. Aetna Rubber Co., 321 Mass. 721, 724, 75 N.E.2d 637 (1947), citing Sprague v. Kimball, 213 Mass. 380, 100 N.E. 622 (1913). Therefore, even if it survives the requirements of Rule 9, Wright's fraud claim still fails as a matter of law.

D.  Wright's breach of contract, breach of fiduciary duty and unjust enrichment claims against Mr. Meara fail because the Partnership Agreement was dissolved upon the sale of the Property

Wright cannot succeed on claims for breach of contract, breach of fiduciary duty and unjust enrichment against Mr. Meara because the Partnership Agreement was dissolved as a matter of law upon the sale of the Property to Mr. Meara. Wright claims that Mr. Meara breached the Partnership Agreement by retaining the proceeds when he subsequently re-sold the Property. Am. Compl. at ¶¶ 45-57. The Partnership, however, dissolved as a matter of law due to the "termination of the definite term or particular undertaking specified in the agreement." Mass. Gen. Laws ch. 108A, § 31(1)(a). The particular undertaking specified in Section 1.2 ceased to exist when Mr. Meara purchased the Property from the Partnership. See Exhibit 1. Therefore, Mr. Meara's retention of the proceeds upon his sale of the Property to the Smiths did not violate the Partnership Agreement because it had ceased to exist. See Situation Management

Sys., Inc. v. Malouf, 430 Mass. 875, 878-79, 324 N.E.2d 699 (2000) (requiring proof of existence of contract, terms, and breach of material term to succeed on breach of contract claim). Further, Mr. Meara's alleged failure to make his required capital contribution to the Partnership or offer his partnership interest to Wright are wholly irrelevant.

Wright's allegations that Mr. Meara breached his fiduciary duty similarly fail because the Partnership Agreement was extinguished upon Mr. Meara's purchase of the Property. Therefore, because Wright and Mr. Meara were no longer partners at the time he re-sold the Property, as a matter of law, Mr. Meara no longer owed Wright any fiduciary duty. Wright has not alleged any damage that she suffered as a result of any actions that Mr. Meara took prior to the Partnership's dissolution. Additionally, even if he did owe her a duty, failing to disclose the value of the Property, a fact that Wright was capable of ascertaining herself, does not amount to the "avarice, expediency or self-interest" contemplated by Donahue v. Rodd Electrotype Co. of New England, Inc., 367 Mass. 578 (1975), and its progeny.

Finally, because Mr. Meara's fiduciary and contractual relationship with Wright ended upon his purchase of the Property, Wright cannot claim that she was unjustly enriched as a result of Mr. Meara' subsequent sale of the Property, which he owned outright. Unjust enrichment occurs when a benefit has been conferred upon a person at the expense of another. National Shawmut Bank of Boston v. Fidelity Mut. Life Ins. Co., 318 Mass. 142, 146, 61 N.E.2d 18 (1945). Moreover, the retention of the benefit must occur under circumstances to make it inequitable for the defendant to retain the benefit. 12 Williston on Contracts 1479 (3rd ed. 1957). As Mr. Meara's relationship with Wright was extinguished, Wright can plead no set of facts to support her claim that he was unjustly enriched when he re-sold the Property.

E. <u>Wright's unjust enrichment claim against Brenda Meara fails as a matter of law because Mrs. Meara was not a party to the Partnership Agreement or the Quitclaim Deed</u>

Wright's unjust enrichment claim against Mrs. Meara similarly fails. Wright has not and cannot allege that Mrs. Meara has retained any benefit "against the fundamental principles of justice or equity and good conscience." <u>Taylor Woodrow Blitman Construction Corp. v. Southfield Gardens Co.</u>, 534 F. Supp. 340, 347 (D. Mass. 1982). Wright cannot sustain a claim of unjust enrichment against Mrs. Meara because Wright does not allege anywhere in the Amended Complaint that Mrs. Meara was a party to either the Partnership Agreement or Quitclaim Deed. Therefore, this claim should be dismissed.

## Conclusion

WHEREFORE, for the foregoing reasons, the Mearas request that their Motion to Dismiss be granted.

WILLIAM ROBERT MEARA
BRENDA MEARA

By their attorneys,

Marc C. Laredo, BBO#543973
Lisa Cooney, BBO# 636631
Laredo & Smith, LLP
15 Broad Street
Boston, MA 02109
617-367-7984

Dated: March 25, 2004

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 3/25/04

10