# EXHIBIT 1

# PARTNERSHIP AGREEMENT

This Partnership Agreement dated as of January 1, 1995 (the "Agreement"), is made by and among Suzanne Wright of Hingham, Massachusetts ("Wright") and William Robert Meara of Hingham, Massachusetts ("Meara"), hereafter referred to collectively as the "Partners" and each of whom is referred to as a "Partner."

WHEREAS, Wright and Meara wish to enter into an agreement pursuant to which they will jointly own, acquire, maintain, lease, sell, dispose of and otherwise deal with property located at 21 Martins Cove Road, Hingham, Massachusetts (the "Property"); and

WHEREAS, the parties wish to enter into this Partnership Agreement to set forth more fully their respective rights, obligations and duties with respect to the Property;

NOW, THEREFORE, for good and valuable consideration, including the mutual covenants set forth below, the receipt and sufficiency of which are hereby acknowledged, the parties hereto have agreed as follows:

## ARTICLE I.

### NAME AND PURPOSE

Section 1.1.  <u>Name and Office</u>

The Partnership has been and shall be conducted under the name of Martins Cove Realty Company.  The principal office of the Partnership shall be c/o Suzanne Wright, 21 Martin's Cove Road, Hingham, Massachusetts 02043 or such other place as the Partners may from time to time determine.

Section 1.2.  <u>Purpose</u>

The purpose and business of the Partnership is to acquire, finance, own, construct, lease, operate, dispose of and otherwise deal with certain real property located at and known as 21 Martin's Cove Road, Hingham, Massachusetts, and the building thereon (the "Property"), and to engage in any and all activities which are necessary or incidental to said purposes.

The Partnership shall not engage in any other business without the prior written consent of all the Partners.

Section 1.3   Term

The term of the Partnership shall continue until terminated pursuant to Section 7.1 hereof.

## ARTICLE II

### CONTRIBUTIONS TO CAPITAL

The Partners have made or shall make the following contributions to the capital of the Partnership upon the following terms and conditions:

Section 2.1.   Contributions to Capital

As of the date of this amendment, each of the Partners has contributed to the capital of the Partnership the amount set forth opposite his name in Exhibit A hereto and each Partner agrees to contribute to the capital of the Partnership in the future any amounts set forth opposite his name in Exhibit A hereto.  Such contributions may be prepaid in whole or in part at any time without premium or penalty.  The Partnership Interest allocable to each Partner shall be in proportion to his paid-in capital.

Section 2.2.   No Interest on Capital

No interest shall be paid on capital contributions or on balances of capital accounts.

Section 2.3.   Withdrawals and Return of Capital

No Partner shall have the right to withdraw or reduce his contributions to the capital of the Partnership except as a result of the dissolution of the Partnership or as otherwise provided by and in accordance with law.  Except as otherwise provided herein, no Partner shall have the right to demand or receive property, other than cash, in return for his capital contribution or have priority over any other Partner, either as to the return of contributions of capital or as to profits, losses, or distributions.  Funds provided to the Partnership by the Partners, other than capital contributions, shall be repaid, together with interest thereon at an annual rate equal to the "Base Rate", so-called, of the First National Bank of Boston then and from time to time in effect, and any borrowing costs which the Partner incurs in providing such funds, or as otherwise agreed upon by the Partners; and, prior to any distribution of any funds to the Partners, from any source.

Section 2.4.   Loans to be Procured by Partners

The Partners agree that it may be necessary to loan or cause to be loaned to the Partnership certain funds for Partnership purposes and that any such loan so made pursuant to this Section 2.4 shall be evidenced by promissory notes, which may be secured by property of the Partnership but which shall be otherwise without recourse to the Partnership and which shall be repayable by the Partnership as a first priority prior to any other distribution to any Partner as such from any source whatsoever.

Section 2.5.   Additional Capital Contributions.

The Partners unanimously agree that, upon the contribution of additional capital by one or more Partner(s), the Partnership Interest(s) of the Partner(s) contributing such additional capital shall be adjusted to reflect the additional contribution of capital as follows:  The Partnership Interest of each contributing Partner shall be made equal to the ratio which all Capital Contributions made by such Partner (including the additional Capital Contribution made pursuant to this Section 2.5) bears to the aggregate of all Capital Contributions made by all Partners (including the additional Capital Contribution made pursuant to this Section 2.5), and the Percentage Interests of any non-contributing Partners shall be decreased proportionately.

ARTICLE III

ALLOCATIONS AND DISTRIBUTIONS

Section 3.1.   Allocations

(a) Profits and Losses Defined.  The terms "profits and losses" shall mean the Partnership's annual net profits or losses as determined for each fiscal year by the Partnership's accountant in accordance with accounting principles used in the industry and as reported for Federal income tax purposes.

(b) All profits, losses and tax credits shall be allocated to the Partners in proportion to their respective Partnership Interests as set forth in Exhibit A hereto, except as may be otherwise required under Sections 704 and 725 of the Internal Revenue Code and regulations promulgated thereunder.

Section 3.2.   Distributions

(a)  After payment of all other Partnership obligations, all cash available for distribution shall be applied and distributed as follows:

- 3 -

2810s

First, to the repayment of any outstanding loans made by any Partners;

Second, the balance, if any, shall be allocated among the Partners in accordance with their partnership interests as set forth in Schedule A.

All distributions to the Partners shall be shared by each Partner in the ratio of his paid-in capital contribution to the paid-in contributions of all Partners.

(b) If any Partner shall reside in the Property, he shall be obligated to pay any real estate taxes and assessments and water and sewer charges and utility costs in connection therewith.

(c) If the Partners determine that the proceeds available to the Partnership exceed the cost of all capital costs required in connection with the maintenance of the Property annually, such excess shall be distributed as a special distribution to Suzanne Wright and treated as a distribution pursuant to Section 731 of the Internal Revenue Code.

ARTICLE IV

RIGHTS AND POWERS OF THE PARTNERSHIP

Section 4.1.   General Powers

Subject to any specific limitations set forth in this Agreement, the Partnership shall have the following powers:

(a) To acquire real property by purchase or lease and to finance, construct, own, lease and operate the Property and to pledge, transfer, sell, or exchange all or part of its interest in said Property;

(b) In furtherance of paragraph (a), to obtain financing for the acquisition and construction of the Property, and from time to time to refinance the same, and to mortgage all or a part of the property of the Partnership to secure the repayment of such financing; and in furtherance thereof, from time to time to enter into and to execute and deliver one or more promissory notes, a mortgage and security agreement and all such other agreements, instruments, and documents as may be necessary or appropriate in connection with the financing or refinancing of the Property;

(c) In furtherance of paragraph (a), from time to time, to enter into and to execute and deliver leases with respect to the Property and to enter into and to execute and deliver all

- 4 -

28105

such other agreements, instruments, and documents as may be appropriate in connection with the acquisition, construction, financing, leasing and operation of the Property;

(d) To acquire, by purchase or otherwise, any personal property necessary, convenient, or incidental to the accomplishment of the purposes of the Partnership; and

(e) To enter into, perform, modify, supplement or terminate any contract necessary to, in connection with or incidental to the accomplishment of the purposes of the Partnership.

## ARTICLE V

### RIGHTS, POWERS AND OBLIGATIONS OF PARTNERS

Section 5.1. *Managing Partner*

a) The powers and duties of the Partners to conduct the business of the Partnership hereunder shall be vested exclusively in the Managing Partner who subject to the terms and provisions of this Agreement shall have the sole authority to act on behalf of the Partnership. The initial Managing Partner shall be Suzanne Wright. In the event of the death or retirement of Suzanne Wright, or should Suzanne Wright be unwilling or unable to serve as Managing Partner, Meara shall become Managing Partner. If Meara shall be unable or unwilling to serve as Managing Partner, Wright shall be the successor Managing Partner, but if she shall be unable or unwilling to serve, the then Partners shall choose a Successor Managing Partner.

b) No Managing Partner may, without the written consent of all the Partners

(i) except for bona fide emergency repairs, expend more than $500.00 for routine repairs, improvements and maintenance;

(ii) incur any further debt or encumbrance on the property;

(iii) terminate the Partnership;

(iv) confess a judgment against the Partnership; or

(v) perform or suffer any act which would substantially alter the nature of the business of the Partnership.

Section 5.2 *Action by Managing Partner*

(a) Subject to the terms and provisions of this Agreement, the Managing Partner shall have all powers necessary,

- 5 -

2810S

convenient or appropriate to carry out the purpose and business of the Partnership referred to in Section 1.2, subject only to the limitations specifically set forth in this Agreement. Subject to Section 5.1, the Managing Partner shall have the exclusive management and control of the business of the Partnership.

(b) Without limiting the generality of the foregoing, the Managing Partner is hereby authorized and empowered on behalf of the Partnership to carry on any activities necessary to, or in connection with, or incidental to, the accomplishment of the purposes of the Partnership, so long as such activities may be lawfully carried on or performed by a partnership under the laws of the Commonwealth of Massachusetts.

(c) Except as specifically limited herein, the Managing Partner shall have the full, exclusive, and complete right to direct and control the business of the Partnership. The Managing Partner has the authority to execute on behalf of the Partnership any checks, documents, agreements, or other instruments.

(d) Suzanne Wright is hereby designated as the "Tax Matters Partner" of the Partnership for all purposes of the Code and any Treasury regulations promulgated thereunder.

(e) The Managing Partner shall, in his sole discretion, make all elections permitted by the Internal Revenue Code of 1986, as amended.

Section 5.3. <u>Partners' Activities and Contracts With Affiliated Persons</u>

The Managing Partner may contract with "Affiliated Persons" for property or services required by the Partnership. "Affiliated Person" shall mean any person, firm or entity (i) which owns or is owned by a Partner in whole or in part; (ii) which is the parent, subsidiary, or affiliate of a Partner; (iii) in which a Partner has any interest whatsoever; or (iv) from which a Partner shall receive any remuneration, directly or indirectly. Neither the Partnership nor the other Partners shall have any rights in or to any income or profits derived from any employment, transaction or other contracts with Affiliate Persons permitted hereby as a result of the partnership relationship created and continued by this Agreement.

2810s

Section 5.4.   Indemnification of Managing Partner

The Managing Partner is hereby indemnified by the Partnership for any act performed by him within the scope of the authority conferred on him by this Agreement, except for acts of willful misconduct, gross negligence, or misrepresentation.

Section 5.5.   Indemnification Among Partners

If at any time there is more than one Partner, each Partner hereby indemnifies and holds harmless each of the other Partners of, from and against any loss, cost or liability incurred by any Partner which is in excess of his or its proportionate share of such loss, cost or liability in connection with or arising from their status as partners from any action taken in their capacity as such partners. All liabilities and obligations of the Partnership shall be borne in proportion to the Partners' interests in the Partnership as set forth in Exhibit A.

Section 5.6.   Liability of Managing Partner

Neither the Partnership nor any Partner shall have any claim against any Managing Partner by reason of any acts or omissions of such Managing Partner provided that such acts or omissions were performed in good faith and in the reasonable belief that the Managing Partner was acting within the scope of his authority under this Agreement and that he was not grossly negligent or guilty of willful misconduct or misrepresentation.

ARTICLE VI

ASSIGNMENT OF PARTNERSHIP INTERESTS AND
SUBSTITUTION OF PARTNERS

Section 6.1.   Prohibited Assignment

No Partner shall sell, transfer, encumber or otherwise dispose (which terms, for the purposes of this Article VI, shall not be deemed to include one or more gifts by any Partner of a portion of his Partnership Interest to his spouse and/or children) of any portion of his Partnership Interest unless he has first offered such portion of his Partnership Interest to the Partnership and the other Partners as set forth in Section 6.2 hereof. Any attempted transfer of any portion of a Partnership Interest made without compliance with the terms of this Section 6.1 shall be void and of no effect.

In no event shall all or any part of a Partnership Interest in the Partnership be assigned or transferred to a minor or

- 7 -

incompetent, and any such attempted Assignment shall be void and ineffectual and shall not bind the Partnership.

Section 6.2.   Offer to Other Partners

The offer required to be made to the Partnership and the other Partners pursuant to Section 6.1 hereof shall be made as follows:

(a)   The Partner proposing to sell or transfer his Partnership Interest or a portion thereof (the "Transferor") shall give notice in writing to the Partnership and each other Partner of his intention to sell, transfer, encumber or otherwise dispose of all or a portion of his Partnership Interest, which notice shall specify the portion to be so sold, transferred, encumbered or disposed of, the name and address of the proposed transferee (if there is any) and the proposed terms and conditions of such sale, transfer, encumbrance or disposition, including the purchase price or other consideration to be given.

(b)   The other Partners and the Partnership (excluding the Transferor) shall have sixty (60) days within which to respond to the offer of the Transferor.  They shall either elect to accept the terms and conditions of the Transferor's offer or notify the Transferor that they decline to accept such terms and conditions.  In the latter case, the Transferor shall be free to transfer the Partnership Interest (or such portion thereof as is specified in the offer) as set forth in said offer, but only in strict accordance with the terms and conditions set forth therein.

(c)   Acceptance of the offer of the Tranferor may be made by the Partnership (excluding the Transferor) or by any number of the remaining Partners.  In the event of such acceptance by the Partnership, the purchase price paid shall be deemed a return of the Partner's capital to the extent of the Transferor's capital account.  In the event of acceptance by more than one of the remaining Partners, they shall be entitled to accept the offer in proportion to their respective Partnership Interests unless they agree otherwise.

(d)   If the Tranferor's offer is rejected by the Partnership (excluding the Transferor) and the other Partners but the Transferor fails to consummate the proposed transaction within ninety (90) days of the notice to the Transferor of such rejection, the limitations of Section 6.1 shall apply as if no notice of the offer was given.

- 8 -

Section 6.3    <u>Assignment</u>

In addition to the requirements of Section 6.2, in order for any Partner to assign all or any part of his Partnership Interest to a person who is not already a Partner, he must comply with the following:

(a) the assignor shall, at the request of the Managing Partner, deliver to the Managing Partner an opinion of counsel in form and substance satisfactory to counsel designated by the Managing Partner, that such assignment and any offerings made in connection therewith are in compliance with applicable federal and state securities laws;

(b) the assignee shall execute a statement that he or it is acquiring such Partnership Interest or part thereof for his or its own account for investment and not with a view to the distribution or resale thereof; and

(c) the Managing Partner shall consent to such assignment (which consent may not be unreasonably withheld, except that consent shall be withheld if in the opinion of mutually agreeable counsel such assignment would result in the termination of the Partnership under the Internal Revenue Code of 1986, as amended).

If the foregoing conditions are not complied with, the Partnership need not recognize such assignment for any purpose whatsoever.

Section 6.4.    <u>Provisions Applicable to All Transferees</u>

An assignee of a Partnership Interest who desires to make a further assignment of his interest shall be subject to all the provisions of Sections 6.1, 6.2 and 6.3 to the same extent and in the same manner as any Partner.

Section 6.5.    <u>Rights and Liabilities of an Assigning Partner</u>

Any Partner who shall have assigned his Partnership Interest shall cease to be a Partner of the Partnership and shall no longer have any of the rights or privileges of a Partner, nor shall he have any liability for the obligations of the Partnership incurred after the date of such assignment.

Section 6.6.    <u>Voluntary Withdrawal of a Partner</u>

A Partner may not voluntarily withdraw from the Partnership without the written consent of all of the other Partners.  Such Partner's withdrawal from the Partnership shall be deemed to

- 9 -

28105

occur on the date of withdrawal stated in a notice given by him to the other Partners, which date of withdrawal shall be at least thirty (30) days after such notice is given.

Section 6.7.   Substitution of a Partner

(a) Subject to the terms of this Section 6.7, upon the death or adjudication of incompetence of any Partner, the legal representatives, heirs or assigns of the Partnership interest of the deceased Partner shall succeed to the interest of the deceased or incompetent Partner, including the share of the capital, profits and losses, and distributions of net cash proceeds which were formerly allocable or distributable to the deceased or incompetent Partner from whom such successor received such Partnership Interest.

(b)  In the event of the substitution of a Partner pursuant to Section 6.7(a), the remaining Partners and the substituted Partner shall have the obligation to continue the business of the Partnership employing its assets and name.

ARTICLE VII

DISSOLUTION:   DISTRIBUTION UPON DISSOLUTION

Section 7.1.   Dissolution

The Partnership shall terminate and dissolve upon the happening of any of the following events:

(a) The withdrawal or Retirement of a Partner, unless within ninety (90) days from the date of the event the remaining Partner(s) elect to continue the business of the Partnership (and in the case of a Retirement pursuant to Section 6.7(a) such election shall be deemed to be duly made).

(b) The determination by the holders of not less than 66.66% of the interests in the Partnership, that the Partnership should be dissolved.

(c) December 31, 2050.

Section 7.2.   Distribution on Dissolution

(a)   Procedure on Liquidation.  Unless the business of the Partnership is continued, upon the termination and dissolution of the Partnership, the Partners or any person elected to perform such liquidation by all of the Partners, or if there is none, such other person required by law to wind up the Partner's affairs, shall proceed with the liquidation of the Partnership,

and the net proceeds of such liquidation shall be applied and distributed in accordance with the provisions of Section 3.2 hereof.

(b) <u>Distribution in Kind</u>. If it becomes necessary to make a distribution of Partnership property in kind, due to the economic impracticability of liquidating the assets of the Partnership, such property shall be transferred and conveyed to the Partners and their assignees so as to vest in each of them as a tenant-in-common an undivided interest in the whole of said property equal to his Interest had there been a distribution of net cash proceeds made in accordance with Section 3.2. hereof.

## ARTICLE VIII

### BOOKS OF ACCOUNT AND REPORTS; FISCAL MATTERS

Section 8.1.  <u>Partnership Records and Books of Account</u>

(a) The Managing Partner, at the expense of the Partnership, shall at all times keep and maintain complete and accurate books, records and accounts of the Partnership, in accordance with methods of accounting used in the industry, and in a manner and form acceptable to the accountants appointed to prepare the Partnership tax returns.

Said records shall include:

(1) a current list of the full name and last known business address of each Partner set forth in alphabetical order;

(2) copies of the Partner's federal, state and local income tax returns and reports, if any, for the three most recent years;

(3) a copy of this Agreement and any amendments hereto; and

(4) any financial statements of the Partnership for the three most recent years.

(b) Said books, records and accounts shall be kept at the principal office of the Partnership. All Partners and their duly authorized representatives shall have the right to audit, examine and make copies of the same during business hours.

(c) Said books shall be kept on an accrual basis.

- 11 -

Section 8.2.  Fiscal Year

The fiscal year of the Partnership shall be the calendar year.  Another year may be designated for financial reporting purposes by the Managing Partner.

Section 8.3.  Bank Accounts

The funds of the Partnership shall be deposited in the name of the Partnership.  Each Partner may at any time examine the Partner's bank balances, statements, and accounts.

Section 8.4.  Tax Returns

The Managing Partner will cause to be prepared or reviewed at Partnership expense, by the accounting firm appointed pursuant to Section 8.1(a), appropriate federal, state and local tax returns which shall be submitted to the Partners not more than ninety (90) days after the close of each fiscal year.

ARTICLE IX

AMENDMENTS

This Agreement may be amended only by written agreement of all of the Partners.

ARTICLE X

GENERAL PROVISIONS

Section 10.1. Notices

(a) Any and all notices or other communications required or permitted by this Agreement or by law to be served on or given to any party hereto by any other party hereto shall be in writing, and shall be deemed duly served and given when personally delivered to the party to whom it is directed, or in lieu of such personal service, three (3) days after deposit in the United States Mail, first class, registered, postage prepaid, addressed to the respective Partners at the addresses shown in Exhibit A hereto.  Any Partner may change his address for the purpose of this paragraph by giving written notice of such change to the other party in the manner provided in this paragraph.

All consents required under this Agreement shall be deemed given unless written notice of nonconsent shall have been

received by the Managing Partner within thirty (30) days after notice of the action requiring such consent has been mailed.

Section 10.2. Governing Law

This Agreement and all amendments hereof and all rights of enforcement hereunder shall be governed by the laws of the Commonwealth of Massachusetts.

Section 10.3. Headings

The headings of the sections of this Agreement are inserted for convenience only and shall not be deemed to constitute a part of this Agreement.

Section 10.4. Further and Additional Documents

Each of the Parties hereto agrees to execute, acknowledge and verify, if required to do so, any and all further or additional documents as may be necessary to fully effectuate the terms of this Agreement.

Section 10.5. Counterparts

This Agreement may be executed in counterparts, which taken together shall constitute a single document.

Section 10.6. Binding on Successors and Assigns

This Agreement shall be binding upon and inure to the benefit of the executors, administrators, successors, and assigns of the respective Partners.

Section 10.7. Waiver

The waiver of any breach, item, provisions, covenant, and/or condition of this Agreement by any of the parties hereto shall not constitute a continuing waiver or waiver of any additional subsequent breach, either of the same or of any other additional or different provision, term, covenant or condition.

Section 10.8. Severability

It is expressly agreed that in the event any court of competent jurisdiction determines that any provision of this Agreement is unlawful or unenforceable, then, and in that event, each and all remaining provisions of this Agreement shall remain in full force and effect.

28105

Section 10.9. <u>Creditors</u>

None of the provisions of this Agreement shall be for the benefit of or enforceable by any of the creditors of the Partnership.

## ARTICLE XI

## DEFINITIONS

The defined terms used in this Agreement shall have the meanings specified below:

"<u>Agreement</u>" means this Partnership Agreement, as the same may be amended from time to time.

"<u>Assignee</u>" means the recipient of an Assignment of a Partnership Interest.

"<u>Assignment</u>" means with respect to a Partnership Interest or part thereof, any offer, sale, assignment, transfer, hypothecation, pledge, gift or any other disposition whether voluntary or by operation of law; excluding however, the disposition of a Partnership Interest pursuant to Section 6.7 of this Agreement.

"<u>Entity</u>" means any general partnership, limited partnership, corporation, joint venture, trust, business trust or association.

"<u>Partnership Interest</u>" means the interest in the Partnership held by each Managing Partner in his capacity as Managing Partner, as indicated on Exhibit A, as it may be amended.

"<u>Partnership</u>" means the partnership as formed in accordance with this Agreement, as said partnership may from time to time be constituted.

"<u>Managing Partner</u>" means the person or persons designated as a Managing Partner in Section 5.1 hereto, or any person who becomes a successor Managing Partner as provided herein, in such person's capacity as a Managing Partner of the Partnership.

"<u>Retirement</u>" means in the case of any Partner the death, incapacity, or bankruptcy of such Partner; (a) incapacity shall mean an adjudication of insanity or incompetency; and (b) bankruptcy shall be deemed to occur when such Partner is adjudicated a bankrupt, or if a petition or an answer is filed proposing the adjudication of such Partner as bankrupt, when such Partner shall consent to filing thereof.

"<u>Substitute Partner</u>" means the assignee of a Partnership Interest who is admitted to the Partnership pursuant to this Agreement.

_____
Suzanne Wright

_____
William Robert Meara

2810s

EXHIBIT A

| Partner's Name & Business Address | Capital Contribution |
|---|---|
| Suzanne Wright<br>21 Martin's Cove Road<br>Hingham, MA  02043 | $600,000.00 |
| William Robert Meara<br>21 Martin's Cove Road<br>Hingham, MA  02040 | $ 24,000.00 on 7/1/95<br>24,000.00 on or before 12/31/96<br>24,000.00 on or before 12/31/97<br>24,000.00 on or before 12/31/98<br>24,000.00 on or before 12/31/99<br>24,000.00 on or before 12/31/2000<br>24,000.00 on or before 12/31/01<br>24,000.00 on or before 12/31/02<br>24,000.00 on or before 12/31/03<br>24,000.00 on or before 12/31/04<br>24,000.00 on or before 12/31/05<br>24,000.00 on or before 12/31/06<br>24,000.00 on or before 12/31/07<br>24,000.00 on or before 12/31/08<br>24,000.00 on or before 12/31/09<br>24,000.00 on or before 12/31/10<br>24,000.00 on or before 12/31/11<br>24,000.00 on or before 12/31/12<br>24,000.00 on or before 12/31/13<br>24,000.00 on or before 12/31/14<br>24,000.00 on or before 12/31/15<br>24,000.00 on or before 12/31/16<br>24,000.00 on or before 12/31/17<br>24,000.00 on or before 12/31/18<br>24,000.00 on or before 12/31/19 |

- 16 -

2810S