UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SUZANNE WRIGHT, Individually and as ) <br> TRUSTEE, MARTIN'S COVE REALTY ) <br> TRUST, ) <br>   ) <br>    Plaintiff, ) <br>   ) <br> v. ) <br>   ) <br> WILLIAM ROBERT MEARA and ) <br> BRENDA MEARA, ) <br>   ) <br>    Defendants. ) <br>   ) | C.A. No. 04-10211RCL |

### DEFENDANTS WILLIAM ROBERT MEARA AND BRENDA MEARA'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS

Introduction

This action arises out of an allegedly false oral statement concerning a home buyer's present intent to live in a house for the "foreseeable future" after he purchased the house. Such a statement, under the circumstances presented here, cannot be the basis for a claim of fraud or any other cause of action. Therefore, this entire action fails and judgment should be entered in Defendants' favor.

Statement of Facts[1]

According to the Second Amended Complaint, in the early 1990s, Defendant Brenda Meara ("Mrs. Meara"), along with several other individuals, was providing personal care and services to Plaintiff Suzanne Wright's ("Wright") ill parents, Paul and Irene Thibodeau. Second Am. Comp. ¶ 7. Eventually, Mrs. Meara and her husband, Defendant William Robert Meara

---

[1] This Statement of Facts is wholly derived from the allegations contained in the Second Amended Complaint which are assumed to be true for purposes of this Motion only.

(Mr. Meara") (collectively referred to as "the Mearas" or "Defendants") moved into the Thibodeaus' home located at 21 Martin's Cove Road in Hingham, Massachusetts (the "Property" or the "House") and Mrs. Meara provided care to Mr. Thibodeau until his death on March 5, 1993. Id. at ¶¶ 8-9, 12-13. Mr. Thibodeau was the owner of the Property at the time of his death.[2] Id. at ¶ 10. The Mearas continued to live in the House after Mr. Thibodeau died. Id. at ¶ 15.

According to the Second Amended Complaint, on January 1, 1995, Wright and Mr. Meara entered into a Partnership Agreement as a means by which Mr. Meara could acquire an ownership interest in the Property. Id. at ¶¶ 15-17 (the Partnership Agreement is attached as Exhibit A[3] hereto and incorporated herein by reference).[4] According to the Partnership Agreement, Mr. Meara was required to make periodic payments of $24,000 per year (plus certain costs) towards his required capital contribution of $600,000. Mrs. Meara was not a party to the Partnership Agreement. According to the Second Amended Complaint, as of the spring of 2003, Mr. Meara had not made all the required payments. Id. at ¶ 19.

According to the Second Amended Complaint, in early 2003, the Mearas expressed an interest in buying the Property outright. Id. at ¶ 20. In January, 2003, the Mearas traveled to California, where Wright had lived for several years, to discuss the possible sale of the Property

---

[2] In preparation for the probating of Mr. Thibedeau's estate, Wright allegedly had the property appraised. Second Am. Compl. ¶ 13. According to the appraisal, the property was worth approximately $600,000. Id. at ¶ 14.

[3] Wright attached the Partnership Agreement as an exhibit to the Second Amended Complaint. See Beddall v. State Street Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998), quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) (documents that a defendant attaches to a motion to dismiss are considered a part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim).

[4] Section 1.2 of the Partnership Agreement, titled "Purpose," stated as follows: "The purpose and business of the Partnership is to acquire, finance, own, construct, lease, operate, dispose of and otherwise deal with certain real property located at and known as 21 Martin's Cove Road, Hingham, Massachusetts, and the building thereon (the "Property"), and to engage in any and all activities which are necessary or incidental to said purpose." See Exhibit A. Section 1.2 further provided that "The Partnership shall not engage in any other business without the prior written consent of all the Partners." Id.

2

to them. Id. at ¶¶ 21, 32. According to Wright, she asked the Mearas whether they planned on selling the Property, to which Mr. Meara responded that they intended to live there for the "foreseeable future." Id. at ¶¶ 23, 25. Wright allegedly agreed to sell the property to the Mearas for $600,000. Id. at ¶ 24.

Significantly, Wright admits that she knew that this sale price was based on the 1995 value of the property, not its value in 2003, and that the purchase price was less than the 2003 fair market value for the property. Id. at ¶ 31. Wright does not allege anywhere in the Second Amended Complaint that the Mearas deceived her in any way concerning the Property's value. See generally Second Am. Compl.

Wright and Mr. Meara executed a one-page quitclaim deed on March 11, 2003, which conveyed the Property outright to Mr. Meara. Id. at ¶ 35. (The quitclaim deed is attached hereto as Exhibit B and incorporated herein by reference).[5] Mrs. Meara was not a party to the quitclaim deed. The quitclaim deed did not contain any language concerning the Mearas' alleged promise that they intended to live in the House for the "foreseeable future." There is no allegation in the Second Amended Complaint that this alleged promise was ever reduced to writing. See generally Second Am. Compl.

Finally, Wright alleges 1) that the Mearas listed the Property for sale by June 18, 2003 for a listing price of $3,250,000; 2) that on or about August 29, 2003, Mr. Meara sold the Property to Michael and Elizabeth Smith for $2,850,088; and 3) that the Mearas subsequently purchased a home in Barnstable, Massachusetts for $885,000. Id. at ¶¶ 36-38.

---

[5] Wright attached the quitclaim deed as an exhibit to the Second Amended Complaint.

Argument

A.   Standard of Review[6]

Rule 12(c) of the Federal Rules of Civil Procedure provides that "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review for a motion for judgment on the pleadings is the same as that for a motion to dismiss under Rule 12(b)(6). Moghaddam v. Dunkin' Donuts, Inc., 295 F. Supp. 2d 136, 138 (D. Mass. 2003). In considering a motion to dismiss, a court must take the [well pleaded] allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993. However, the Rule 12(b)(6) standard "is not entirely a toothless tiger." Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). "[M]iminal requirements are not tantamount to nonexistent requirements. The threshold [for stating a claim] may be low, but it is real." Id., quoting, Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988).

The Court need not credit "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). Rule 12(b)(6) does not entitle the plaintiff to rest on "subjective characterizations" or conclusory descriptions of a "general scenario which could be dominated by unpleaded facts." Id. at 53; Dewey v. University of New Hampshire, 694 F.2d 1, 3 (1st Cir. 1982), cert. denied, 461 U. S. 944 (1983). Because Wright's Second Amended Complaint fails to meet this burden, judgment should enter in Defendants' favor.

---

[6]   Massachusetts' law applies to this action for two reasons. One, the Partnership Agreement upon which Wright bases her claims contains a section titled "Governing Law," which states that the Agreement shall be governed by Massachusetts law. See Exhibit A. "Absent serious conflict with public policy, Massachusetts' courts generally uphold choice of law provisions in contracts." Roadmaster Indus., Inc. v. Columbia Mfg. Co., Inc., 893 F. Supp. 1162, 1173 (D. Mass. 1995). Second, the Property is located in Massachusetts. FDIC v. Henry, 818 F. Supp. 452, 454 (D. Mass. 1993), citing Restatement (Second) of Conflict of Laws §§ 228-229, 254 (1971).

B.  <u>Wright's action fails as a matter of law because Mr. Meara's alleged oral promise regarding the Mearas' intent to stay in the Property for the foreseeable future cannot form the basis for a fraud claim in the circumstances of this case</u>

1.  <u>Promissory statements are not actionable fraud</u>

Wright bases her entire fraud claim against the Mearas on a single alleged *promise* that they would live in the Property for the "foreseeable future" after Mr. Meara purchased it. It is well settled, however, that false representations concerning future events or matters promissory in nature are not actionable fraud. Saxon Theatre Corp. of Boston v. Sage, 347 Mass. 662, 667, 200 N.E.2d 241, 245 (1964); Cellucci v. Sun Oil Co., 2 Mass. App. Ct. 722, 730, 320 N.E.2d 919, 924 (1974). A promissory statement is not a representation of an existing fact susceptible of knowledge, which is required to state a claim for fraud. Fogarty v. Van Loan, 344 Mass. 530, 532, 183 N.E.2d 111 (1962); see also Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77, 575 N.E.2d 70, 74 (1991) (enumerating essential elements of a fraud claim, including proof of a misrepresentation of material fact). This rule is "particularly true when the alleged misrepresentation occurs in the course of commercial negotiations."[7] Continental Fin. Servs. Co. v. the First Nat'l Boston Corp., 1984 U.S. Dist. LEXIS 23978, *15-16 (D. Mass. 1984);[8] see also Chase v. Aetna Rubber Co., 321 Mass. 721, 724, 75 N.E.2d 637 (1947) (holding that failure to carry out oral promise to convey land is not fraud).

It is true that, in certain cases, false statements of present intent can form the basis for a claim of fraud if "the statements misrepresented the actual intention of the speaker and were relied upon by the recipient to his damage." Starr v. Fordham, 420 Mass. 178, 187, 648 N.E.2d 1261, 1267 (1995), citing McEvoy Travel Bureau, Inc. v. Norton Co., 408 Mass. 704, 709, 563 N.E.2d 188 (1990); see also Ciarlo v. Ciarlo, 244 Mass. 453, 456, 139 N.E. 344 (1923) (stating

---

[7] This case involved an arms length transaction between two individuals represented by counsel.
[8] Attached hereto as Exhibit C.

that a promise can form the basis for a fraud claim when the speaker had no intent to perform the promise at the time it was made). Wright has failed to allege facts that place this matter within this exception.

First, Wright has failed to adequately plead that she *reasonably* relied on the alleged promise to her *detriment*. Wright can only recover for fraud if she relied on the alleged misrepresentation and her reliance was justifiable. Restatement (Second) Torts § 537(a) & (b) (1957). The alleged reliance has to be a substantial factor in bringing about the claimed loss. Id. at comment a. In order for the reliance to be justifiable, the matter misrepresented must be material. Id. at § 538(1). A misrepresentation is material if "(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it." Id. at § 538 (2).[9]

Wright could not have justifiability relied on Mr. Meara's alleged promise to live in the House for the "foreseeable future" because such a statement is, by definition, not material. A reasonable person selling a house would not attach importance to how long the buyer planned to live there after the sale was completed, particularly when the seller lived thousands of miles away. Whether and how long a buyer intends to remain in the house after a sale is a factor that is "*so obviously unimportant* that the jury could not reasonably find that a reasonable man would have been influenced by it." See Rodowicz v. Massachusetts Mutual Life Ins. Co., 192 F.3d 162, 174 (1st Cir. 1999), citing Restatement (Second) of Torts § 538(2)(a), comment e (emphasis in original).

6

Moreover, the promise itself is inherently vague. There is no method by which one can define "foreseeable future." It is a subjective term, and could mean a month, six months, one year, five years, or even twenty years. It is unreasonable, as a matter of law, to rely on such vague assurances. Buker v. National Management Corp., 16 Mass. App. Ct. 36, 44 (1983). See also Hinchey v. NYNEX Corp., 979 F. Supp. 40, 44 (D. Mass. 1997) (stating that alleged misrepresentations that plaintiff would receive certain benefits upon his termination were not specific enough so that he could have reasonably relied on them).

Significantly, Wright does not allege that she was misled as to something tangible such as the value or condition of the property (indeed, she concedes that she knew she was selling it for less than fair market value)[10]; that she was somehow barred from inquiring into the value or ascertaining it for herself; that she was misled about the marketability of the property; or that she owned adjacent property that was effected by the subsequent sale of the house to a new owner. See Thompson v. Barry, 184 Mass. 429, 432-33, 68 N.E. 674, 675 (1903) (finding fraud where seller misrepresented identity of buyer of lot which was adjacent to the Seller's other property).

Rather the sole predicate for Wright's action is that she had a subjective desire for the Mearas to continue to own the house for some indeterminate length of time after the sale and that she would not have sold them the house but for purportedly false representations as to their intent in this regard. Second Am. Compl. ¶ 31. This desire, however, cannot support a claim for fraud.[11] Moreover, Wright does not allege anywhere in the Second Amended Complaint that the Mearas' *knew* that she was relying on the alleged promise that the Property would not be sold in

---

[9] See Rodowiwicz v. Massachusetts Mutual Life Ins. Co., 192 F.3d 162, 174 (1st Cir. 1999) (declaring that the standard for materiality as set forth in the Restatement (Second) of Torts and Massachusetts case law applies in analyzing misrepresentation claim).

[10] Moreover, the fair market value of the property was an inherently knowable fact.

[11] It remains inherently unclear what period of time the Mearas would have had to live in the Property after the sale in order to satisfy Wright's subjective desire and avoid liability for fraud – one year, five years, ten years? This ambiguity makes clear that Wright cannot sustain a claim for fraud based on these facts.

7

the "near future" and that this was somehow central or important in her decision to sell to them. See Restatement (Second) of Torts § 538(2) comment f and 538(2)(b).

        2.    <u>Wright could not succeed in an action to specifically enforce the alleged promise</u>

In considering whether Wright has stated a claim for fraud, it is instructive to note that Wright could not succeed in an action to specifically enforce the alleged oral promise because it violates the statute of frauds.[12] Any promise involving real property is enforceable only if it is reduced to writing and meets the requirements of the Statute of Frauds. <u>Schwanbeck v. Federal-Mogul Corp.</u>, 412 Mass. 703, 709, 592 N.E.2d 1289, 1293 (1992); Mass. Gen. Laws ch. 259, § 1.[13] The Second Amended Complaint contains no allegation that any writing ever existed which reflected the Mearas' alleged promise that they intended to live on the Property for the foreseeable future. The Quitclaim Deed executed by Wright and Mr. Meara *after* this promise was allegedly made does not satisfy the statute because it contains no language concerning the promise or any restrictions on Mr. Meara's use of or right to resell the Property. See <u>Simon v. Simon</u>, 35 Mass. App. Ct. 705, 709, 625 N.E.2d 564, 567 (1994) (stating that writing must contain all of the essential terms of the alleged agreement to satisfy the Statute of Frauds). In order to satisfy the Statute, the writing must "*incorporate directly and accurately the promise that the party seeks to enforce.*" <u>Harrington v. Fall River Housing Auth.</u>, 27 Mass. App. Ct. 301,

---

[12] The statute provides, in part, that "No action shall be brought...Upon a contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them...Unless the promise, contract or agreement upon which such action is brought...is in writing and signed by the party to be charged therewith." Mass. Gen. Laws ch. 259, § 1.

[13] Whether a writing satisfies the Statute of Frauds is a question of law. <u>Simon</u>, 35 Mass. App. Ct. at 709, 625 N.E.2d at 567.

306, 538 N.E.2d 24, 28-29 (1989) (emphasis added). Therefore, the alleged promise is unenforceable.[14]

  C. <u>Since Wright's fraud claims fail, her remaining breach of fiduciary duty, breach of contract, and unjust enrichment claims also fail</u>

Wright's remaining claims against Defendants for breach of fiduciary duty, breach of contract and unjust enrichment all fail because they are grounded in the same allegedly false promise that forms the basis of the fraud claim. Moore v. Marty Gilman, Inc., 965 F. Supp. 203, 220, 223 (D. Mass. 1996) (holding that plaintiff's remaining claims for negligent misrepresentation, estoppel and unfair trade practices must fail because fraud claim failed).

Moreover, the Partnership Agreement was dissolved as a matter of law upon the sale of the Property to Mr. Meara due to the "termination of the definite term or particular undertaking specified in the agreement." Mass. Gen. Laws ch. 108A, § 31(1)(a). In other words, the Partnership ceased to exist when Mr. Meara purchased the Property. See Exhibit A. Therefore, Mr. Meara's retention of the proceeds upon his subsequent sale of the Property to the Smiths did not violate the Partnership Agreement because it no longer existed. See Situation Management Sys., Inc. v. Malouf, 430 Mass. 875, 878-79, 324 N.E.2d 699 (2000) (requiring proof of existence of contract, terms, and breach of material term to succeed on breach of contract claim).

---

[14] Wright has not pleaded any facts that would take the matter outside of the Statute of Frauds. Wright's claim of reliance on the alleged oral promise not to sell the Property cannot form the basis of an estoppel claim which could conceivably remove the agreement from the Statute of Frauds. Ravosa v. Zais, 40 Mass. App. Ct. 47, 51-52, 661 N.E.2d 111, 116 (1996) (stating that reliance on oral agreement to convey real property does not rise to the level which estops the defendant from pleading the Statute of Frauds defense). Additionally, Wright's argument that the sale of her interest in the real estate constitutes "partial performance" which takes this case outside of the statute of frauds is incorrect. Wright's conduct in selling the Property cannot constitute partial performance because it is simply performance of the contract as memorialized in the signed Quitclaim Deed. It is not performance of the oral agreement or that can be explained only by the existence of the oral agreement. See In re The Receivership Estate of Indian Motorcycle Mfg., Inc., 299 B.R. 36, 48-49 (D. Mass. 2003). Moreover, the absence of evidence to support the existence of the alleged oral agreement between the parties renders the argument of partial performance insufficient to defeat the statute of frauds.

Wright's allegations that Mr. Meara breached his fiduciary duty similarly fail because the Partnership Agreement was extinguished upon Mr. Meara's purchase of the Property. Therefore, because Wright and Mr. Meara were no longer partners at the time he re-sold the Property, as a matter of law, Mr. Meara no longer owed Wright any fiduciary duty. Moreover, Wright has not alleged any damage that she suffered as a result of any actions that Mr. Meara took prior to the Partnership's dissolution. Indeed, this case does not involve any claims that Mr. Meara misled Wright as to the Property's value. Additionally, even if he did owe her a duty, failing to disclose the value of the Property, a fact that Wright was capable of ascertaining herself, does not amount to the "avarice, expediency or self-interest" contemplated by <u>Donahue v. Rodd Electrotype Co. of New England, Inc.</u>, 367 Mass. 578 (1975), and its progeny.

Finally, because Mr. Meara's fiduciary and contractual relationship with Wright ended upon his purchase of the Property, Wright cannot claim that Mr. Meara was unjustly enriched as a result of his subsequent sale of the Property, which he owned outright. Unjust enrichment occurs when a benefit has been conferred upon a person at the expense of another. <u>National Shawmut Bank of Boston v. Fidelity Mut. Life Ins. Co.</u>, 318 Mass. 142, 146, 61 N.E.2d 18 (1945). Moreover, the retention of the benefit must occur under circumstances to make it inequitable for the defendant to retain the benefit. 12 <u>Williston on Contracts</u> 1479 (3rd ed. 1957). As Mr. Meara's relationship with Wright was extinguished, Wright can plead no set of facts to support her claim that he was unjustly enriched when he re-sold the Property.

    D.    <u>Even if this Court rules that Wright's claims against Mr. Meara survive the Rule 12 standard, Wright's fraud and unjust enrichment claims against Brenda Meara fail because she is not alleged to have made any false statements and has not been unjustly enriched.</u>

Wright cannot state a claim for fraud against Mrs. Meara because, absent a duty to speak, silence does not constitute fraud. <u>Schultz v. Rhode Island Hosp. Nat'l. Bank</u>, 94 F. 3d 721, 730

(1st Cir. 1996). Wright's unjust enrichment claim against Mrs. Meara fails because Wright has not and cannot allege that Mrs. Meara has retained any benefit "against the fundamental principles of justice or equity and good conscience." Taylor Woodrow Blitman Construction Corp. v. Southfield Gardens Co., 534 F. Supp. 340, 347 (D. Mass. 1982). Moreover, Wright cannot sustain a claim of unjust enrichment against Mrs. Meara because Wright does not allege anywhere in the Second Amended Complaint that Mrs. Meara made any false statements or that she was a party to either the Partnership Agreement or Quitclaim Deed. Moreover, it does not appear from the pleadings that justice requires making Mrs. Meara pay Wright. Id. (stating relevant inquiry when determining liability of third party to the contract is whether justice requires making him or her pay). Therefore, judgment should enter in Mrs. Meara's favor on these claims.

## Conclusion

WHEREFORE, for the foregoing reasons, the Mearas request that their Motion for Judgment on the Pleadings be granted.

WILLIAM ROBERT MEARA
BRENDA MEARA

By their attorneys,

Marc C. Laredo, BBO#543975
Lisa Cooney, BBO# 636631
Laredo & Smith, LLP
15 Broad Street
Boston, MA 02109
617-367-7984

Dated: June 28, 2004

## CERTIFICATE OF SERVICE

I, Lisa Cooney, attorney for Defendants William Robert Meara and Brenda Meara hereby certify that on this date I served the above Memorandum by causing same to be delivered by first class mail to counsel of record as listed below:

*L and fax*

Scott L. Machanic, Esq.
Holly Anderson, Esq.
Cunningham, Machanic, Johnson & Harney, LLP
220 North Main Street
Natick, MA  01760

*/s/ Lisa Cooney*
Lisa Cooney, BBO# 636631
Laredo & Smith, LLP
15 Broad Street
Boston, MA 02109
617-367-7984

Dated: June 28, 2004

12