## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10211 RCL

| | |
|---|---|
| SUZANNE WRIGHT, Individually and | ) |
| As TRUSTEE, MARTIN'S COVE | ) |
| REALTY TRUST | ) |
|     Plaintiff | ) |
| | ) |
| vs | ) |
| | ) |
| WILLIAM ROBERT MEARA and | ) |
| BRENDA MEARA, | ) |
|     Defendants | ) |

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS WILLIAM ROBERT MEARA AND BRENDA MEARA'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Suzanne Wright hereby opposes Defendants' Motion for Judgment on the Pleadings, on the ground that she has alleged facts that, when properly taken as true, entitle her to relief on each Count made subject to the Motion.

**I.      Ms. Wright's Allegations Satisfy The Applicable Standard of Review, As She Alleges Facts Sufficient to Permit Recovery.**

Defendants' Motion may not be granted unless "it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Correa-Martinez v. Arrillaga-Belendez*, 903 F.2d 49, 52 (1st Cir. 1990), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61 (1st Cir. 2004); *see Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16 (1st Cir. 1989), *overruled on other grounds by Educadores Puertorriqueños en Acción v. Hernández, id.* (same).

According to Ms. Wright's Second Amended Complaint, Defendant Brenda Meara took care of Ms. Wright's parents, Irene and Paul Thibodeau, during their last years. *Second Amended Complaint* ("SAC"), ¶ 7. Ultimately, to provide the care Mr. Thibodeau needed, Mrs.

Meara and her husband, William Meara, moved into Mr. Thibodeau's house located at 21 Martin's Cove Road, Hingham, Massachusetts (the "Property"). *SAC* ¶ 8-11. Approximately five years later, in March of 1993, Mr. Thibodeau died, and Ms. Wright had the Property appraised. *SAC* ¶¶ 11-13. The Property appraised for $600,000. *SAC* ¶ 14. The Mearas continued to live in the Property and expressed a desire to have an ownership interest in it, so Ms. Wright entered into a Partnership Agreement (dated as of January 1, 1995) setting out the mechanism by which that desire could be satisfied (the "Agreement"). *SAC* ¶15-17. Ms. Wright also executed a Declaration of Trust in furtherance of the Agreement (the "Trust"). *SAC* ¶ 18. By the spring of 2003, Mr. Meara was behind on the payments due under the Agreement by approximately $123,300. *See SAC* ¶ 19.

In early 2003, the Mearas stated that they wished to buy the Property and make it their residence for the foreseeable future. *SAC* ¶20. On or about January 15-18, 2003, the Mearas traveled to California and met with Ms. Wright in the Mearas' hotel room to discuss the proposed sale of the Property (the "Meeting"). *SAC* ¶ 21-22. During the Meeting, Ms. Wright specifically asked Mr. Meara whether the Defendants were planning to sell the Property, and when Mr. Meara responded that he and his wife had no such plans, Ms. Wright expressly stated that if the Property were to be sold immediately, the proceeds should go to the Trust and Partnership. *SAC* ¶¶ 23-24. Mr. Meara again denied any intention to sell the Property and represented that the Mearas intended to live in the Property for the foreseeable future. *SAC* ¶ 25.

During the Meeting, Ms. Wright believed, and it appeared to her, that Mr. Meara was acting on Mrs. Meara's behalf. *SAC* ¶ 29. In conversations prior to the Meeting, when discussing their interest in the Property, both of the Mearas used the term "we." *SAC* ¶ 27. Mrs. Meara had told Plaintiff that, out of consideration for their friendship with Ms. Wright, Mr.

Meara would handle the "business" aspects of the dealings between Ms. Wright and the Mearas. *SAC* ¶ 28. Most significantly, Mrs. Meara was present and did not object while Mr. Meara spoke for them both. *SAC* ¶¶ 26, 29.

Based on Mr. Meara's representations of the Mearas' intentions, Ms. Wright agreed to sell the Property to the Mearas for $600,000 rather than selling at full value with the proceeds going to the Trust and Partnership and the proceeds eventually being divided according to the terms of the Partnership Agreement. *SAC* ¶¶ 30-31, 43-44, 49-50; *see also id.* ¶ 24. On March 11, 2003, Ms. Wright executed a quitclaim deed to Mr. Meara for the sum of $600,000 (the "Wright-Meara Sale"). *SAC* ¶ 35. Within approximately three months, the Mearas listed the Property for sale, and on or about August 29, 2003, executed a quitclaim deed to Michael and Elizabeth Smith for $2,850,088 (the "Meara-Smith Sale"). *SAC* ¶¶ 36-37. Also on or about August 29, 2003, the Mearas purchased, as tenants by the entirety, a piece of real estate in Barnstable for $885,000. *SAC* ¶ 38.

Ms. Wright alleges that Mr. Meara's representations regarding the Mearas' intentions for the Property were false, and known to be false, by the Mearas when Mr. Meara made them, and that both Defendants intended Ms. Wright to rely upon Mr. Meara's statements. *SAC* ¶¶ 41-42, 48-49.[1] She also alleges that Mr. Meara's representations breached his duty of strict faith to his partner. *See SAC* ¶¶ 66-67, 69-73. Finally, she alleges that as a result of the foregoing transactions as well as Mr. Meara's failure to make all payments due under the Partnership Agreement, the Mearas have netted $1,965,088 in addition to the Barnstable property, and that

---

[1] Under the Federal Rules of Civil Procedure, "[s]tate of mind, including motive and intent, may be averred generally." *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61 (1st Cir. 2004), *citing* Fed. R. Civ. P. 9(b).

Mrs. Meara has benefited from the contract between Ms. Wright and Mr. Meara, at a minimum by way of her undivided interest in the Barnstable property. *SAC* ¶¶ 39, 78-79.

When these allegations are taken as true and all reasonable inferences are drawn in Ms. Wright's favor, *see Mogghaddam v. Dunkin' Donuts, Inc.*, 295 F. Supp. 2d 136, 138 (D. Mass. 2003)), it is clear that Ms. Wright has set forth, for each of her claims, "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Podiatrist Ass'n, Inc. v. La Cruz Azul de Puerto Rico, Inc.*, 332 F.3d 6, 19 (1st Cir. 2003), *citing, inter alia, Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). Consequently, Defendants' Motion for Judgment on the Pleadings should be denied.

## II.    Mr. Meara's Statements Regarding Mr. And Mrs. Meara's Intentions Not to Sell and To Stay In The Property Are Actionable.

Ms. Wright has adequately stated a claim for misrepresentation: she has alleged at least one "false statement of a material fact made [by the Mearas] to induce [her] to act . . . .", *Zimmerman v. Kent*, 31 Mass. App. Ct. 72, 77, 575 N.E.2d 70, 74 (1991) (setting out elements of misrepresentation); she has alleged that the statements "misrepresent[ed] the actual intention of the speaker . . . .", *Starr v. Fordham*, 420 Mass. 178, 187, 648 N.E.2d 1261, 1267 (1995) (explaining when a **statement of present intention** as to future conduct may form the basis of a fraud claim); and she has alleged that she relied on the statements to her detriment. *See Zimmerman, id.; Starr, id.* Furthermore, the representations were material and Ms. Wright's reliance on them was justified: under the circumstances as alleged, the Mearas knew "or **had reason to know that [Ms. Wright] regard[ed] or [was] likely to regard the [Mearas' intentions] as important in determining [her] choice of action** . . . ." *Restatement (Second) of*

*Torts* § 538(2)(b) (1957)[2] (explaining when a representation is material)(emphasis added); *see also Restatement (Second) of Torts* § 538(1) (reliance justifiable if misrepresentation is material).[3]   Therefore, Mr. Meara's statements of the Mearas' intent were material for purposes of Ms. Wright's misrepresentation claim, even if "a reasonable [person] would not so regard [them]." *Id.*

Ms. Wright sufficiently alleges detrimental reliance:  the Wright-Meara Sale itself, standing alone, "constitute[s] sufficient detrimental reliance." *Starr v. Fordham*, 420 Mass. 178, 189 (1995) (where plaintiff would not have joined law firm absent misrepresentations, act of joining met detrimental reliance element of misrepresentation).

Contrary to Defendants' assertions, materiality may be determined by a subjective, rather than objective, test, if "the maker of the representation knows or has reason to know that the recipient regards or is likely to regard the matter as important."  Restatement, § 538(2)(b).  Given

---

[2] Section 538 of the Restatement (Second) of Torts provides as follows:

§ 538. Materiality Of Misrepresentation

(1) Reliance upon a fraudulent misrepresentation is not justifiable unless the matter misrepresented is material.

(2) The matter is material if

(a) a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question; or

(b) the **maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important** in determining his choice of action, although a reasonable man would not so regard it.  (Emphasis added)

[3] Ms. Wright alleges discussions regarding sale to the Mearas as a couple, although the actual deed was only to Mr. Meara.  Mrs. Meara, being Mr. Meara's then-current and cohabiting spouse, would naturally gain the practical benefits of any sale of the Property to Mr. Meara—and indeed did. *SAC* ¶¶ 78-79.

the history of the relationship between the parties, and of the Defendants with Plaintiff's parents,

Defendants knew or should have known that Plaintiff would regard their intention to remain in

the house as an important factor in her decision; in fact, she alleges she told him of that

importance, as she said that if the property were to be sold immediately, the proceeds should go

to the Trust and Partnership. (*SAC* ¶ 25.)

Defendants' cited authorities are easily distinguished or state something different than

that represented by Defendants:

- Unlike in *Saxon Theatre Corp. of Boston v. Sage*, 347 Mass. 662, 200 N.E.2d 241 (1964),
  and *Continental Financial Services Co. v. First National Boston Corp.*, 1984 U.S. Dist.
  LEXIS 23978 (D. Mass. August 30, 1984), the Mearas' expressions of intent were <u>not
  subject to future negotiations</u> and therefore could reasonably be relied upon. For
  example, unlike in *Saxon Theatre*, the price, locus, and identity of buyer and seller were
  known to all parties—the <u>only</u> question was whether Ms. Wright would go forward with
  the sale as proposed. Furthermore, unlike in either *Saxon Theatre* or *Continental
  Financial Services*, Ms. Wright's justifiably relied on Mr. Meara's statements regarding
  the Mearas' intentions.

- As explained in Part IV below, whether the Mearas lived at the Property for the
  foreseeable future or sold it soon after acquisition was entirely within their control, at
  least on the record presented here. In contrast, the misrepresentation claim in *Fogarty v.
  Van Loan*, 344 Mass. 530, 183 N.E.2d 111 (1962), involved a statement regarding the

course of future events outside of the defendant's control—the movement of water and
soil over time and how such movement might affect flooding in the plaintiff's basement.

- When Mr. Meara misrepresented the Mearas' intentions, he was Mrs. Meara's partner—a
  relationship in which the participants "owe each other a fiduciary duty of the highest
  degree of good faith and fair dealing." *Starr v. Fordham*, 420 Mass. 178, 183, 648
  N.E.2d 1261, 1265 (1995). According to *Chase v. Aetna Rubber Co.*, 321 Mass. 721, 75
  N.E.2d 637 (1947), failure to carry out an oral promise to convey land is not fraud
  "*where no relation of trust and confidence exists.*" *Id.* at 724, 639 (emphasis added).

- Defendants' citation notwithstanding, *Rodowicz v. Massachusetts Mutual Life Ins. Co.*,
  192 F.3d 162 (1st Cir. 1999), is an ERISA case that nowhere speaks to the materiality of a
  statement of intent to remain in a property for some period of time after acquisition.
  Defendants' incomplete quote hid the fact that the *Rodowicz* Court was citing a comment
  on the "reasonable man" standard for materiality set out in Restatement (Second) of Torts
  § 538(2)(a).[4] As established above, however, the "reasonable man" standard of
  materiality does not apply in this case, where "the **maker of the representation knows
  or has reason to know that its recipient regards or is likely to regard the matter as**

---

[4] The full quote reads, "a trial court applying common law principles may withdraw a
misrepresentation case from the jury only upon concluding that the fact misrepresented 'is *so
obviously unimportant* that the jury could not reasonably find that a reasonable man would have
been influenced by it. Restatement (Second) of Torts § 538(2)(a), comment e (emphasis
supplied)." *Rodowicz*, 192 F.3d at 174-175.

**important**. *See Restatement (Second) of Torts* § 538(2)(b) (1957) (setting out alternative

test for materiality of representation).

III.    **Under Principles Of Agency And Ratification, Mrs. Meara Is Bound By Mr. Meara's Fraudulent Statements.**

a.    **William Meara had apparent authority to act for Brenda Meara**

Because Mr. Meara had at least apparent authority to make the statements of intent on

Mrs. Meara's behalf, and also because Mrs. Meara ratified those statements by failing to disavow

them, she is bound by them and she must answer for the fraud in her own right.

"[A] principal is liable for an agent's misrepresentations that cause pecuniary loss to a

third party, when the agent acts within the scope of his apparent authority. <u>Restatement (Second)</u>

<u>of Agency</u>,   §§ 249, 262 (1957) . . . ." *American Society of Mechanical Engineers, Inc. v.*

*Hydrolevel Corp.*, 456 U.S. 556, 565 (1982).

> Apparent or ostensible authority "results from conduct by the principal which causes a third person reasonably to believe that a particular person ... has authority to enter into negotiations or to make representations as his agent." W. A. Seavey, Agency s 8D, at 13 (1964). *See* Restatement (Second) of Agency s 8 (1958); H. G. Reuschlein & W. A. Gregory, *Agency and Partnership* s 23, at 57-58 (1979). *See also Neilson v. Malcolm Kenneth Co.*, 303 Mass. 437, 441, 22 N.E.2d 20 (1939); *Globe Ticket Co. of New England v. Boston Retail Grocers' Ass'n,* 290 Mass. 235, 238, 195 N.E. 309 (1935). If a third person goes on to change his position in reliance on this reasonable belief, the principal is estopped from denying that the agency is authorized. See W. A. Seavey, *supra* s 8E, at 14.

*Hudson v. Massachusetts Property Insurance Underwriting Association,* 386 Mass. 450, 457, 436

N.E.2d 155, 159 (1982). *See also Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 745, 729

N.E.2d 1113, 1121 (2000) (discussing creation of apparent authority).

Ms. Wright's allegations, when taken as true, establish apparent (and perhaps actual)

authority in Mr. Meara to act as Mrs. Meara's agent with respect to the Property.  Because Mr.

Meara's "representations [regarding Mrs. Meara's intentions] did not exceed any apparent limitations on [Mr. Meara's] authority," *Cellucci v. Sun Oil Co.*, 2 Mass. App. Ct. 722, 730, 320 N.E.2d 919, 924 (1974), "[Mrs. Meara] is liable for the fraudulent representations of [Mr. Meara] in doing the business which [Mrs. Meara] entrusted to him." *Id.*

### b. Brenda Meara ratified her husband's statements, made in her presence.

By being present but silent at the Meeting, Mrs. Meara also ratified Mr. Meara's statements. Where an agent's acts are not authorized, and the principal knows or reasonably should know of those acts, failure to disavow the acts ratifies them and binds the principal to all consequences flowing therefrom. *See Perkins v. Rich*, 11 Mass. App. Ct. 317, 323, 415 N.E.2d 895, 899 (1981) (church liable under mortgages entered into in its name by minister acting outside the scope of his authority, where church reasonably should have known of mortgages and failed to disavow them). Therefore, even if Mrs. Meara did not have an obligation to answer Ms. Wright's questions regarding the Mearas' intentions, she had to correct her husband's statements in order to avoid being bound by them. She did not, and she is bound.

Ms. Wright has alleged a valid claim of fraud against Mrs. Meara stemming from her husband-agent's fraudulent statements because those statements were either authorized or ratified by Mrs. Meara. Consequently, Defendants' Motion should be denied.


### IV.    Mr. Meara's Statements Regarding His And His Wife's Intentions Were Not Merely Promissory In Nature: They Were Statements Of Fact As To Which Defendants Had Superior Knowledge, And To The Extent The Statements Concerned Future Acts, Those Acts Were Within Defendants' Exclusive Control.

Defendants labor to paint Mr. Meara's statements regarding the Mearas' intentions as mere promises not actionable in fraud, but it has long been the law that "[p]resent intention as to

a future act is a fact. It is susceptible of proof. When such intention did not exist, and the maker

of the representation knows it does not exist, *it is a misrepresentation of a material fact*."

*Feldman v. Witmark*, 254 Mass. 480, 481, 150 N.E. 329, 329 (1926); *McBirney v. Paine*

*Furniture Co.*, 1999 WL 1411359, *4 (Mass. Super. Dec. 10, 1999), *quoting Feldman, id., as*

*quoted in Barrett Assocs. v. Aronson,* 346 Mass. 150, 152 (1963).

Furthermore, "[a]lthough as a general rule representations as to future events are not

actionable, an exception has been recognized where the parties to the transaction are not on equal

footing but where one has or is in a position where he should have superior knowledge

concerning the matters to which the misrepresentations relate." *Cellucci v. Sun Oil Co.*, 2 Mass.

App. Ct. 722, 730, 320 N.E.2d 919, 924 (1974) (internal citations and quotations omitted). As

between Ms. Wright and the Mearas, the latter obviously had superior knowledge with respect to

their true intentions—indeed, only they could have had such knowledge first-hand. Therefore,

the exception applies, making actionable the Mearas' representations of intent.

Finally, Mr. Meara's "prediction that [the Mearas would live in the Property for the

foreseeable future] is not like a prediction as to the weather. It lies within the entire and

exclusive control of [the Mearas]." *Id.* The Mearas have pointed to no unexpected, unavoidable

change of circumstances arising, through no fault of theirs, after the Wright-Meara Sale, that

required the Mearas to list the Property for sale three months after acquiring it. *Contrast*

*Connolly v. Rochester Shoe Tree Co., Inc.,* 1994 WL 879515, **2-3 (Mass. Super. November 8,

1994) (employer's promise to pay bonus not shown to be false when made where evidence of

employer's "disastrous financial circumstances" explained abandonment of promise). In the

absence of such a change, the *timing* of the property flip—close on the heels of the statement of

intent to stay in the Property for the foreseeable future and their flat denials of any intention to

sell soon—reasonably permits an inference that, when Mr. Meara made those statements, he misrepresented his and his wife's then-present intentions. That inference must be drawn in Ms. Wright's favor at this stage of the case.

Defendants had superior knowledge regarding the truth or falsity of Mr. Meara's statements of the Mearas' then-present intentions regarding the Property, and those statements referred to future events wholly within Defendants' control. The Motion should be denied.

## V.    Mr. Meara's Statement Of Intent To Stay In The Property "For The Foreseeable Future" Was Not So Vague As To Preclude Reliance On It.

Defendants' cite nothing but distinguishable cases to support their assertion that the durational term "for the foreseeable future" is too vague to be relied upon.   Furthermore, Defendants ignore cases establishing that (1) the Court will supply terms which are reasonable in the circumstances where a contract completely lacks essential terms and (2) the meaning of an ambiguous contract term is a question of fact as to which evidence may be admitted at trial, and that ambiguity alone is therefore not a sufficient basis for entry of judgment, particularly in a case like this where discovery has not even begun.

### a. Courts supply a missing essential term, and enforce the contract

"Where the parties to a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances will be supplied by the court." *Fay, Spofford & Thorndike, Inc. v. Mass. Port Authority*, 7 Mass.App.Ct. 336, 341,  387 N.E.2d 206, 210  (1979).      Defendants' contention that the involved agreement can not be enforced is not logical. It makes little sense that a contract which is lacking entirely an essential term may be enforced, while a contract which uses the term

"foreseeable" to at least address an essential term can not be enforced. Rather, the Court will supply a time limit which is reasonable under the circumstances of this case. Whatever that reasonable limit might ultimately be, the few months involved here, before the property was listed and then sold, would fall within that reasonable limit.

### b. Defendants cited distinguishable cases.

In *Buker v. National Mgmt. Corp.*, 16 Mass. App. Ct. 36, 448 N.E.2d 1299 (1983), the plaintiff claimed that a promise to fix certain problems in leased property "to [Buker's] satisfaction" estopped defendant to deny an amendment to the plaintiff's contractual duty to make repairs. The Court denied the claim on two grounds—each a distinguishing point.

First, "nothing in the record suggest[ed] that the promise was made with the intention of inducing Buker's reliance on its substance or that Buker altered his conduct in reliance on the statement," *Id.*, 16 Mass. App. Ct. at 44, 448 N.E.2d at 1304. Here, Ms. Wright expressly alleges that Mr. Meara's statements regarding the Mearas' intentions were intended by both Defendants to induce Ms. Wright's reliance on them, and Ms. Wright did change her position in reliance thereon.

Second, the *Buker* court supported its characterization of the promises as "inherently vague" by citing *Tull v. Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626, 632, 389 N.E.2d 447 (1979). *Tull* involved expressions of intent made during ongoing negotiations which the Court found could not reasonably be relied upon. Therefore, as to the vagueness point for which Defendants cite it, *Buker* is distinguishable on the same grounds as *Saxon Theatre* and *Continental Financial Services*.

*Hinchey v. NYNEX Corp.*, 979 F.Supp. 40 (D. Mass. 1997), the holding of which Defendants mis-describe in their parenthetical, is also distinguishable. Hinchey brought claims of, *inter alia*, promissory estoppel and misrepresentation, based on the contents of NYNEX's reduction-in-force plan ("Plan"), code of business conduct ("Code"), certain oral promises made by Hinchey's supervisor regarding benefits to be given Hinchey as part of his voluntary separation ("Benefits"), and a supervisor's comments that Hinchey "was a valued employee in good standing" ("Comments"). *Id.* at 44. Only the Comments were deemed too vague to justify Hinchey's reliance, *see Id.*, and the Court supported its finding by citation to *Saxon Theatres*, distinguished earlier. The claims based on the Code, the Plan, and the Benefits were rejected for lack of detrimental reliance and/or Hinchey's failure to offer evidence that NYNEX "falsely made the promises with the intention *at the time* never to fulfill them." *Id.* (emphasis in original). In contrast, as discussed above, Ms. Wright has alleged false expression of present intent to take future action and justifiable, detrimental reliance thereon.

### c. Courts resolve ambiguities

It is instructive to note that, while terms such as "foreseeable future" can reasonably support different interpretations, such ambiguity does not require treatment of such a promise as a contract unenforceable due to lack of an essential term. "When a contract contemplates a definite result and the agreement itself lacks an expiration date, the law implies that it will continue for a reasonable time. . . . What is reasonable depends upon the intent of the parties, the nature of the contract, and other attendant circumstances." *Rezendes v. Barrows*, 1998 WL 470505, * 12 (Mass. Super. August 11, 1998) (internal citations omitted). Evidence may be admitted to determine the intended meaning of ambiguous terms. *Woolf v. Sapient Corp.*, 2001

WL 34038577, * 3 (Mass. Super. February 2, 2001). "Where the evidence is disputed as to . . .

the meaning of the words used by the parties, the matter should be left to the jury." *McEvoy v.*

*Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 715-716, 563 N.E.2d 188, 195-196 (1990)

(question of what "long-term arrangement" meant was properly submitted to the jury).

     In addition, one could reasonably infer that, in answering Ms. Wright's direct inquiry into

the Mearas' intentions for the Property, Mr. Meara purposely used an ambiguous term such as

"foreseeable future" to evade a direct answer, to create the false impression that the Mearas

intended to remain in the Property for a period of years, and ultimately to induce Mrs. Meara to

agree to the Wright-Meara Sale. *See, e.g., Carleton v. Timpone*, 2000 WL 306715 (Mass. App.

Div. March 20, 2000) (summary judgment denied where defendant's failure to answer question

regarding property's history of fire raised permissible inference that defendant intended to hide

latent fire damage when she gave evasive answer to earlier questions about observable water

damage). That inference must be drawn in Ms. Wright's favor in considering Defendants'

Motion.


### VI.    Neither The Unavailability Of Specific Enforcement Nor The Statute Of Frauds Prevents Recovery In This Case.

     Defendants' argument regarding specific performance and the Statute of Frauds is

entirely irrelevant. "Massachusetts law is well settled that, where a party against whom

enforcement of an oral contract is sought has made a material misrepresentation, that party may

be estopped from raising the Statute of Frauds defense." *Hurwitz v. Prime Communications,*

*Inc.*, 1994 WL 561834, *2 (Mass. Super. Ct. April 4, 1994) (citations omitted). Such estoppel

pertains in misrepresentation cases as well as promissory estoppel cases. *Id.* at ** 3-4.

Furthermore, although specific performance would not be available to Ms. Wright in any event because she has an adequate remedy at law—damages, which she seeks in this action—other contractual remedies, such as rescission, are not foreclosed. "Fraud in the inducement can serve as both a basis for tort liability . . . and as grounds for rescinding a contract," even where the contract rescinded does not contain the fraudulent statements relied upon. *Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc.*, 329 F.3d 216, 223-226 (1st Cir. 2003) (where defendant corporate directors acted outside their authority and fraudulently induced plaintiff to enter into a contract with defendant corporation, plaintiff properly recovered tort damages from director-defendants and also rescinded the contract fraudulently induced).

## VII.    Mr. Meara's False Statements Of Intent Breached His Fiduciary Duty To His Partner, Ms. Wright; A Portion Of The Proceeds From The Mearas' Sale Of The Property Is Recoverable As Resulting Damages

Mr. Meara's misrepresentation of the Mearas' intentions breached the "fiduciary duty of the highest degree of good faith and fair dealing" he owed to his partner, Ms. Wright, and she may recover the damages suffered as a result regardless of when those damages accrued. *See Starr v. Fordham*, 420 Mass. 178, 183, 648 N.E.2d 1261, 1265 (1995) (description of duty owed).

Taking Plaintiff's allegations as true, the large margin of profit obtained by the Mearas from the Meara-Smith Sale resulted directly from the Wright-Meara Sale, which was in turn a direct result of Mr. Meara's fraudulent and duty-breaching statements regarding the Mearas'

15

intentions.  Under these circumstances, a portion of the profits realized in the Meara-Smith Sale

are damages directly flowing from Mr. Meara's breach of his partnership duties owed to Ms.

Wright, and the status of the partnership after the Wright-Meara sale is irrelevant.[5]


### VIII.   Both Mr. And Mrs. Meara Have Been Unjustly Enriched.

If this Court determines that Ms. Wright does not have an adequate legal remedy against

one or both of the Defendants, Ms. Wright can have relief on the basis of unjust enrichment,

because Mr. and Mrs. Meara have both "[retained] money [rightfully Ms. Wright's] . . . against

the fundamental principles of justice or equity and good conscience." *Taylor Woordow Blitman*

*Construction Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982).


Mr. Meara, the transacting Defendant in the Wright-Meara and Meara-Smith Sales, has

been unjustly enriched because Ms. Wright conferred the benefit of a below-market sale price

directly on him as a result of his misrepresentations; the value of the benefit conferred was

merely quantified in the Meara-Smith sale. *See Id.* ("[t]ypically, unjust enrichment involves a

direct benefit conferred on one party by another").  Mrs. Meara has also been unjustly enriched,

---

[5] Ms. Wright denies that the Partnership "ceased to exist" as of the Wright-Meara sale. .  "The
dissolution of a partnership is the change in the relation of the partners caused by any partner
ceasing to be associated with the carrying on as distinguished from the winding up of the
business."  M.G.L. Ch. 108, §29.  "On dissolution, the partnership is not terminated, but
continues until the winding up of partnership affairs is completed."  M.G.L. Ch. 108(a), §30.
Furthermore, "the dissolution of the partnership does not of itself discharge the existing liability
of any partner."  M.G.L. Ch. 108(a), §36.

because she has received the benefits of Mr. Meara's fraud[6] on Ms. Wright in the form of an

undivided interest in real estate and perhaps in access to nearly two million dollars beyond that.

*See Id.* (unjust enrichment "is also recognized where a third person benefits from a contract

between two others.").


## CONCLUSION


Ms. Wright has stated direct claims for misrepresentation and unjust enrichment against

Mr. Meara, which claims arise out of his statements regarding the Mearas' then-alleged intention

not to sell the Property soon and to live in it for the foreseeable future.  Under principles of

agency and ratification, Ms. Wright has also alleged a viable claim of misrepresentation against

Mrs. Meara arising out of those statements.  The allegations also support an unjust enrichment

claim against Mrs. Meara, who has benefited from the fraudulently-induced Wright-Meara Sale.


Ms. Wright can recover a portion of the profits realized in the Meara-Smith Sale as

damages directly flowing from Mr. Meara's misrepresentations, which breached the duties owed

to Ms. Wright as her then-partner.  This is so regardless of the unavailability of specific

performance or the alleged dissolution of the partnership after the Wright-Meara Sale.


Neither the Statute of Frauds nor the ambiguity in of the term "foreseeable future"

prevents recovery:  Defendants are estopped in cases such as this from reliance on the Statute of

---

[6] She also participated directly in the fraud by, at a minimum, ratifying Mr. Meara's fraudulent
statements made on her behalf with apparent authority.

Frauds, and the meaning of the term "foreseeable future" can be determined by examination of extrinsic evidence. Especially where, such as here, creation of that ambiguity furthered Defendants' fraud, judgment should not enter before discovery is complete.

For all of the above reasons, Defendants' Motion for Judgment on the Pleadings should be denied in its entirety.

## REQUEST FOR ORAL ARGUMENT

As oral argument may assist the Court, Plaintiff requests a hearing on this Motion.

Respectfully submitted
Suzanne Wright, individually and as
Trustee of Martin's Cove Realty Trust
By her attorneys

Scott L. Machanic   BBO # 311120
Holly B. Anderson  BBO # 649482
Cunningham, Machanic, Cetlin,
    Johnson & Harney, LLP
220 N. Main Street
Natick, MA 01760
Tel:  (508) 651-7524
Fax: (508) 653-0119

225594
4816/0001